GENERAL FINANCE CORPORATION, Postal Finance Company, and Barclays-AmericanCorporation, Plaintiffs-Appellants,

v.

FEDERAL TRADE COMMISSION, et al., Defendants-Appellees.

No. 82–2510.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1983.

Decided Feb. 10, 1983.

Robert J. Lepri, McDermott, Will & Emery, Chicago, Ill., for plaintiffs-appellants.

Leslie Rice Melman, F.T.C., Washington, D.C., for defendants-appellees.

Before BAUER, WOOD and POSNER, Circuit Judges.

POSNER, Circuit Judge.

The plaintiffs-appellants are three companies engaged in the consumer-loan business. Although they are not insurance companies, they sell credit life insurance, as agents of such companies, in conjunction with loans they make; and they brought this suit in the federal district court in Chicago for a declaratory judgment and injunction to prevent the Federal Trade Commission from investigating their insurance activities. They say that the investigation violates section 6 of the Federal Trade Commission Act, 15 U.S.C. § 46—the very statute that confers investigatory powers on the Commission—by virtue of a provision added to the section in May 1980 by the Federal Trade Commission Improvements Act of 1980, Pub.L. 96–252, § 5(a), 94 Stat. 375. The provision states: "Nothing in this section ... shall apply to the business of insurance ...." The plaintiffs base federal jurisdiction on 28 U.S.C. § 1331, the general federal question jurisdiction statute. Although 28 U.S.C. § 1337, which gives the federal district courts original jurisdiction over suits arising under acts of Congress regulating interstate commerce, including the Federal Trade Commission Act, was the preferred jurisdictional basis of suits seeking to enjoin the FTC in the days when section 1331 had a minimum amount in controversy requirement, it no longer makes any difference which section is used.

The district court dismissed the suit on the ground that it was an inappropriate method of seeking a judicial determination of the lawfulness of the Commission's investigation, and the plaintiffs have appealed.

The McCarran-Ferguson Act, 15 U.S.C. § 1012(b), provides that the Federal Trade Commission Act is "applicable to the business of insurance [only] to the extent that such business is not regulated by State law." In the late 1970s—a feisty era for the Federal Trade Commission, under the controversial chairmanship of Michael Pertschuk—the Commission took the position that the McCarran-Ferguson Act limited only its power to bring cease and desist order proceedings under section 5 of the Federal Trade Commission Act and not its investigatory powers under section 6, and launched a series of investigations of matters plainly beyond the reach of section 5 as amended by the McCarran-Ferguson Act—matters such as "the fairness of risk classification and pricing in the area of private automobile insurance, and ... the extent to which the Los Angeles insurance market is adequately served." S.Rep. No. 500, 96th Cong., 1st Sess. 14 (1979). The 1980 amendment to section 6 made the McCarran-Ferguson Act expressly applicable to that section. See *id.* at 13–15.

Nevertheless, in September 1980, after the amendment was passed, the Commission announced a section 6 investigation of the plaintiffs and 40 other companies (including some automobile dealers) engaged in the consumer-loan business. The purpose of the investigation was to determine whether the companies were violating section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1)—which, so far as is relevant here, forbids "unfair or deceptive acts or practices in or affecting [interstate] commerce"—by misrepresenting to customers that they had to buy credit life insurance in order to get credit granted or extended. Although the Commission had been investigating the alleged practice informally for a decade, it now wanted to use compulsory process; and in May 1981, it followed up its announcement of the formal investigation by issuing a "civil investigative demand," a type of subpoena, to each of the 43 companies, pur-

suant to section 20(c) of the FTC Act, 15 U.S.C. § 57b–1(c).

The companies petitioned the Commission under 15 U.S.C. § 57b–1(f) to quash the subpoenas. When the Commission denied the last petition on November 17, 1981, compliance with the subpoenas was due, see 15 U.S.C. § 57b–1(f)(2), unless the Commission extended the due date. The Commission says it granted an extension to one of the plaintiffs, BarclaysAmerican, till November 27. Although BarclaysAmerican disputes this, the issue is trivial since there are no sanctions for failing to comply with a subpoena of this type unless and until a district court enters an order under section 20(e) of the Act, 15 U.S.C. § 57b–1(e), directing compliance. See 15 U.S.C. § 57b–1(h); cf. 15 U.S.C. § 50; S.Rep. No. 500, *supra,* at 15–16.

So the plaintiffs could, after the FTC's deadline for compliance had passed, have sat back and waited to be sued under section 20(e). But instead they brought this suit on November 23, 1981. Other subpoenaed companies brought similar suits in other districts at about the same time, but the other suits have been either dismissed or consolidated with the FTC's enforcement action in Philadelphia (about which more presently), except for one that is pending in another district court in this circuit.

On December 4, 1981, the Commission filed in the federal district court in Philadelphia a section 20(e) enforcement suit against the three plaintiffs in this suit and three of the other companies it had subpoenaed. The Commission's counsel told us at oral argument that Philadelphia was chosen because it was the district where the largest number of subpoenaed companies—eight— could be joined, consistently with the limitation of venue in section 20(e) to districts in which the defendant "resides, is found, or transacts business." (The reason only six of the eight companies were sued is that the Commission worked out an informal settlement with the other two.) The district court in Philadelphia initially stayed the suit with respect to those defendants that are the plaintiffs in this case, but it vacated its stay after the court below dismissed this case. Other Philadelphia defendants filed counterclaims against the Commission to enjoin it from continuing its investigation of credit life insurance, but the court in Philadelphia dismissed these counterclaims on the ground that the defendants could get the relief they wanted simply by defending against the FTC's suit. *FTC v. Manufacturers Hanover Consumer Services, Inc.,* 543 F.Supp. 1071 (E.D.Pa.1982).

 If it were not for the amendment to section 6 that forbids the Federal Trade Commission to investigate "the business of insurance," there would be no doubt that this suit was properly dismissed even though it is within the literal terms of 28 U.S.C. §§ 1331 and 1337. You may not bypass the specific method that Congress has provided for reviewing adverse agency action simply by suing the agency in federal district court under 1331 or 1337; the specific statutory method, if adequate, is exclusive. See Administrative Procedure Act, §§ 10(b), (c), 5 U.S.C. §§ 703, 704; *Assure Competitive Transport., Inc. v. United States,* 629 F.2d 467, 471 (7th Cir.1980). Therefore the target of a section 6 investigation may not maintain a suit under sections 1331 or 1337 to enjoin the investigation but must wait till the government sues to enforce a subpoena or other compulsory process in aid of the investigation, since that is the method of judicial review of FTC investigations that Congress has prescribed. The Supreme Court so held more than 50 years ago, *FTC v. Claire Furnace Co.,* 274 U.S. 160, 173–74, 47 S.Ct. 553, 556, 71 L.Ed. 978 (1927), and its holding is repeated in numerous court of appeals cases— *Wearly v. FTC,* 616 F.2d 662 (3d Cir.1980), being the most recent, and *First Nat'l City Bank v. FTC,* 538 F.2d 937 (2d Cir.1976), a suit by a bank claiming that it was within the express exemption from section 6 for banks, the most like this case. Cases involving investigations by other agencies reach the same result. See, e.g., *Reisman v. Caplin,* 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964).

 Long before the FTC's investigation of the marketing of credit life insurance can bear fruit in the form of cease and desist orders for violations of section 5, the

FTC will have to go into court—it has already gone into court—to enforce its subpoenas. Since the plaintiffs can, in the subpoena enforcement proceeding, get a judicial determination of the lawfulness of the investigation before any sanction for violating the law is imposed on them, a still earlier round of judicial review, in a suit to enjoin the investigation, would waste judicial resources. Cf. *FTC v. Standard Oil Co. of California,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980). This assumes, of course, that the lawfulness of the investigation is reviewable in the action to enforce the subpoena. Although the scope of judicial review in such an action is limited, see *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 215–17, 66 S.Ct. 494, 508–509, 90 L.Ed. 614 (1946), there is no doubt that a court asked to enforce a subpoena will refuse to do so if the subpoena exceeds an express statutory limitation on the agency's investigatory powers. *FTC v. Miller,* 549 F.2d 452, 460 (7th Cir.1977); cf. *Walling, supra,* 327 U.S. at 216, 66 S.Ct. at 509.

The waste of judicial resources would be very great in a case like this, where the investigation is industry-wide. The plaintiffs would have us allow each of the 43 targets of the investigation to sue the FTC, maybe in 43 different districts, though some consolidation might be ordered, see *Abbott Laboratories v. Gardner,* 387 U.S. 136, 155, 87 S.Ct. 1507, 1519, 18 L.Ed.2d 681 (1967). If judicial review is confined to suits to enforce the subpoenas, budgetary limitations if nothing else should force the FTC to bring as few such suits as it can do consistently with observing the venue limitations of section 20(e).

The plaintiffs argue, however, that the 1980 amendment to section 6 gave insurance companies a specific right not to be investigated which they can enforce under 28 U.S.C. §§ 1331 or 1337 without waiting for the Commission to sue them under 15 U.S.C. § 57b–1(e). They base this argument on the legislative history of the amendment, which they say shows that Congress wanted the targets of section 6 investigations to be able to bring suit to enjoin any investigation that was within the scope of the insurance exemption, and

on the Supreme Court's decisions in *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), and *Abbott Laboratories v. Gardner, supra.*

Although the Commission in the 1970s claimed the power to investigate matters over which the McCarran-Ferguson Act had stripped it of any enforcement powers, and the 1980 amendment to section 6 rejected that claim, the legislative history contains no evidence that Congress thought the limitation it was placing on the Commission's investigative powers could not be adequately policed by courts asked to enforce compulsory process. It is true that section 6 is not confined to investigations in which such process is used, but this has always been true and there is no indication that Congress in 1980 or at any other time thought subpoena enforcement proceedings gave the targets of unlawful section 6 investigations inadequate protection; the objective of the amendment was substantive rather than remedial. The plaintiffs' argument would require us to choose between untenable interpretations of the 1980 amendment: that it gave a right of action to firms in the insurance business but not to banks, savings and loan institutions, and common carriers, which section 6 also places beyond the Commission's investigative reach; and that although limited to the business of insurance the amendment gave all exempt targets of section 6 investigations a right of action.

*Leedom v. Kyne* was a suit by the president of a union of professional employees against the members of the Labor Board. The union wanted to be the collective bargaining representative of just the professional employees at a plant but the Board expanded the collective bargaining unit to include nonprofessional employees. After the union won an election held on the basis of the expanded unit, the plaintiff brought suit under 28 U.S.C. § 1337 to set aside the Board's order certifying that unit. The Supreme Court described the suit as one "to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition of the Act" against combining professional and nonprofessional employees in the same bargaining unit, 358

U.S. at 188, 79 S.Ct. at 183, and held that "where, as here, Congress has given a 'right' to the professional employees it must be held that it intended that right to be enforced . . .," *id.* at 191, 79 S.Ct. at 185. The plaintiffs in this case argue that the 1980 amendment to section 6 gave them a right to be free from an investigation of their insurance activities and that it must be held that Congress intended that right to be enforced by the route they have taken.

But *Leedom v. Kyne* differs from the present case in two respects. First, it is unclear how the union could have obtained judicial review of the Board's action in certifying an improper bargaining unit except by the method used. Review of certification orders normally comes about in the following manner: the employer refuses to bargain with the union, thus precipitating an unfair labor practice proceeding against the employer, and the lawfulness of the certification is reviewed on the employer's appeal from the Board's remedial order in the unfair labor practice proceeding. If the employer in *Leedom v. Kyne* was indifferent to the composition of the bargaining unit, as it may well have been, the lawfulness of the certification could not have been reviewed in the ordinary way of Board orders. The plaintiffs in the present case had only to contest the Commission's efforts to enforce the subpoenas in Philadelphia—which they are doing—to get judicial review of the Commission's alleged violation of section 6. The question in *Leedom v. Kyne* was whether judicial review should be held to be entirely precluded despite the presumption of judicial reviewability of agency action in section 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702; the question here is just the timing and adequacy of judicial review by the prescribed method, a subpoena enforcement proceeding.

Second, the impropriety of the Board's action was conceded in *Leedom v. Kyne,* but here, despite the very emphatic language in the plaintiffs' brief, it is uncertain whether the Commission exceeded its authority under section 6. The meaning of "the business of insurance," the operative phrase in

both the McCarran-Ferguson Act and the amended section 6 of the FTC Act, is unsettled. Selling life insurance as an agent for an insurance company is the business of life insurance in a literal but maybe not the intended sense. The Senate Report does describe the business of insurance comprehensively and even says it includes "the selling and advertising of policies," S.Rep. No. 500, *supra,* at 15, which is what the Commission is investigating here. But the report states on the same page that "the amendment does not affect the FTC's existing jurisdiction, as circumscribed by the McCarran Act, to conduct law enforcement investigations to determine whether conduct violates section 5 of the FTC Act" and that "the FTC retains its authority to conduct law enforcement investigations of the insurance business (to the extent presently permitted by the McCarran Act)." And, still on the same page, the report refers approvingly to *Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), where the Supreme Court had read the legislative history of the McCarran-Ferguson Act as "strongly suggest[ing] that Congress understood the business of insurance to be the underwriting and spreading of risk" and had expressly left open the question whether "the fixing of agents' commissions" was part of the business. *Id.* at 221, 224 n. 32, 99 S.Ct. at 1078, 1080 n. 32. *Royal Drug* gives the Commission some room to argue that it can, without violating the insurance proviso in section 6, act against misrepresentations in the sale of insurance by companies that are not insurance companies and that are using the misrepresentations to get more finance business rather than more insurance business. The Fifth Circuit has just accepted this argument, *FTC v. Dixie Finance Co.,* 695 F.2d 926 (1983) (per curiam), and while the district court in Philadelphia, or the Third Circuit, may decide in the subpoena enforcement proceeding that the 1980 amendment bars the investigation after all—may reject *Dixie Finance,* a decision by a divided panel—it cannot be said that the Commission is flouting a clear legislative directive, as the Labor Board was doing in *Leedom v. Kyne.*

As interpreted by this and other circuits, see, e.g., *American Gen'l Ins. Co. v. FTC,* 496 F.2d 197, 200 (5th Cir.1974); *Frey v. Commodity Exchange Authority,* 547 F.2d 46, 47, 49 (7th Cir.1976), the principle of *Leedom v. Kyne* has become a special case of a more comprehensive principle, also invoked by the plaintiffs, as to when 28 U.S.C. §§ 1331 or 1337 may be used to obtain judicial review of preliminary administrative action. Announced in *Abbott Laboratories v. Gardner, supra,* 387 U.S. at 149–53, 87 S.Ct. at 1515–1517, the broader principle is a gloss on section 10(c) of the Administrative Procedure Act, 5 U.S.C. § 704, which authorizes judicial proceedings to review "agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court...." No statute makes a decision by the FTC to launch an investigation under section 6 of the FTC Act reviewable. But if that decision can fairly be regarded as "final," it is judicially reviewable anyway, and, "in the absence or inadequacy [of the special statutory review proceeding], [in] any applicable form of legal action ... in a court of competent jurisdiction." APA § 10(b), 5 U.S.C. § 703. If the subpoena enforcement proceeding provided for in section 20(e) of the Federal Trade Commission Act is inadequate for getting that decision reviewed, then the applicable form of legal action would be an injunctive or declaratory suit under 28 U.S.C. §§ 1331 or 1337.

■ The final step in the analysis is supplied by *Abbott Laboratories* itself, and the many cases following it such as *Wearly v. FTC, supra,* 616 F.2d at 666–68: formerly nonfinal agency action, not reviewable in a special statutory review proceeding, is final, and reviewable under sections 1331 or 1337, when it is ripe for judicial review, and it is ripe when (1) further proceedings before the agency are not necessary to give sharp focus to the issue on which judicial review is sought, and (2) the action of which review is sought is hurting the plaintiff now—is not just a portent of a future harm that cannot occur unless and until the agency takes other measures against him. *Leedom v. Kyne* was ripe by this standard because

the plaintiff was raising a pure issue of law whose definition would gain nothing from further administrative proceedings, and the injury to the union in having to represent employees it did not want to represent was immediate and could not be redressed through any alternative channel of judicial review.

The question the plaintiffs want us to decide is ripe in the first sense, that is, adequately focused—it could, after all, be decided in a subpoena enforcement proceeding brought at the same stage of the investigation. But it is not ripe in the sense of creating an immediate injury. Compliance with the subpoenas could be a hardship but it is one the plaintiffs can prevent by defending successfully against the Commission's enforcement action in Philadelphia. The only harm the plaintiffs cannot ward off in Philadelphia is whatever harm they may suffer from being investigated by means other than compulsory process—and we doubt that there is any such harm, present or impending, even if we disregard the Commissions counsel's assurance at oral argument that the informal investigation has been suspended pending the outcome of the subpoena enforcement suit. If the plaintiffs were as tormented by the informal investigation as they now say they are, they would have brought this suit right after the amendment to section 6 became effective, in the spring of 1980; they would not have waited 18 months till compliance with subpoenas issued by the Commission was due. It is the subpoenas that worry them, not the pinpricks that a Commission stripped of its coercive powers of investigation might still be able to inflict. The impact of the informal investigation falls far short of that of the regulation challenged in *Abbott Laboratories,* which required "an immediate significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance ...." 387 U.S. at 153, 87 S.Ct. at 1517.

All this is not to deny that the principle of *Leedom v. Kyne* as refined in *Abbott Laboratories* may some day write *finis* to the Commission's investigation of the plain-

tiffs' insurance activities. Suppose that the Third Circuit holds, contrary to the Fifth Circuit, that the Commission exceeded its authority in conducting this investigation, and quashes the subpoenas, and the Supreme Court affirms the Third Circuit, yet the Commission continues the investigation—not with compulsory process, of course, but by interviewing state insurance regulators and the plaintiffs' customers, competitors, and employees and by sending investigators to the plaintiffs' offices, posing as customers. The Commission would then be exceeding a clear congressional mandate—more precisely, a mandate made clear by authoritative judicial interpretation—in circumstances where the victims of its unlawful activity, like the union in *Leedom v. Kyne,* had no judicial remedy other than a suit under 28 U.S.C. §§ 1331 or 1337. The Commission's investigation would still be pesky rather than menacing but it could impose cumulatively significant costs on the plaintiffs.

The plaintiffs have jumped the gun, however. The Commission is not yet acting in clear defiance of Congress, and they have a good alternative remedy in Philadelphia. Although that remedy theoretically is not perfect, because it is limited to investigation by compulsory process, we cannot believe that the Commission, which has had to fight for its very survival in recent Congresses, would run the risk of incurring the further wrath of Congress by persisting in an investigation after the courts held that it violated an express and recently enacted statutory limitation on the Commission's powers.

■ It remains to consider the proper form of dismissal in this case. We cannot tell whether the district court dismissed the suit for lack of subject-matter jurisdiction or for lack of equity. Both formulations are found in the cases. Compare *Wearly v. FTC, supra,* 616 F.2d at 668, with *First Nat'l City Bank v. FTC, supra,* 538 F.2d at 938–39. The choice is not inconsequential, and not only because issues of subject-matter jurisdiction are not waivable and issues of equitable discretion are. If the question on appeal is not whether the district court had jurisdiction but whether it abused its discretion in granting or denying the relief sought by the plaintiff, the system of judicial review of agency action will be as various as the individual judgments of federal district judges, and an already complicated and uncertain system will be made more so. We do not think this would be a good result, or one intended by Congress. The jurisdiction of the federal courts to review administrative action is codified in the Administrative Procedure Act. If a review proceeding is not authorized by section 10(c), because it is premature, general jurisdictional statutes such as 28 U.S.C. §§ 1331 and 1337 cannot be used to confer jurisdiction.

This case must therefore be dismissed for lack of jurisdiction and not merely for lack of equity. As so clarified, the judgment dismissing the complaint is

AFFIRMED.