615 F.Supp. 1155 (1985)
NORTH CAROLINA STATE BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS AND LAND SURVEYORS, Plaintiff,
v.
FEDERAL TRADE COMMISSION, Defendant.
No. 84-517-Civ-5.
United States District Court, E.D. North Carolina, Raleigh Division.
August 15, 1985.
*1156 Wright T. Dixon, Jr., Carolin Bakewell, Raleigh, N.C., for plaintiff.
Fred Dooley, F.T.C., Office of Gen. Counsel, Washington, D.C., for defendant.

ORDER
TERRENCE WILLIAM BOYLE, District Judge.
Plaintiff, North Carolina State Board of Registration for Professional Engineers and Land Surveyors [hereinafter "Board"], brought this action pursuant to 5 U.S.C. § 704; 15 U.S.C. § 49 and 28 U.S.C. §§ 1331, 1337 and 2201. Plaintiff named as defendant the Federal Trade Commission [hereinafter "Commission"]. The plaintiff Board, an entity created by the North Carolina General Assembly, alleges that the defendant Commission's issuance of a subpoena ad testificandum and a *1157 subpoena duces tecum was an ultra vires action not authorized by the Federal Trade Commission Act[1] [hereinafter "FTCA"]. The Board further alleges that the administrative review procedures utilized by the Commission deprived it of procedural due process as guaranteed by the fifth amendment.
The Board seeks declaratory and injunctive relief. Specifically, it requests that the court restrain the Commission from enforcing the two subpoenas issued to the Board and from issuing further subpoenas. Furthermore, the Board requests that the court declare a rule of professional conduct promulgated by the former to be exempt from FTC investigation. The Board has apparently dropped its request for a temporary restraining order in this matter.
The Commission filed a motion to dismiss, alleging that no statutory basis for subject matter jurisdiction exists in this case, and that the plaintiff in any event has failed to state a claim upon which relief may be granted. For the reasons given hereafter, the Commission's motion to dismiss is granted.

FACTUAL BACKGROUND
The facts regarding the Commission's investigation of the plaintiff Board are, for the most part, undisputed. The North Carolina State Board of Registration for Professional Engineers and Land Surveyors was created by the North Carolina General Assembly in 1921. See N.C.Gen.Stat. § 89C-4 (1981). All members of the Board are appointed by the Governor. Id. The Board consists of four registered professional engineers, three registered land surveyors and two public members who are neither professional engineers nor land surveyors. Id. The Board is responsible for promulgating and adopting rules of professional conduct applicable to the practice of engineering and land surveying. N.C.Gen. Stat. § 89C-20 (1981). The Board is required to submit its proposed rules to the North Carolina Attorney General. N.C. Gen.Stat. § 150A-59 (1981).
Pursuant to this legislative authority, the Board in 1979 promulgated and approved Rule 56.071(e)(8) and incorporated the same into its Rules of Professional Conduct. Rule 56.0701(e)(8) provides:
The [Engineer or Land Surveyor] shall not attempt to supplant another engineer or land surveyor in a particular employment after becoming aware that the other has been selected for the employment.
On April 2, 1984, a staff attorney for the Commission notified the Board's executive secretary that the agency was conducting an investigation to determine whether Rule 56.0701(e)(8) was in violation of § 5 of the FTCA, i.e., 15 U.S.C. § 45. The Commission requested that the Board provide it with certain information regarding the rule. On April 12, 1984, the Board informed the Commission that it would not voluntarily furnish the information requested.
Faced with the Board's refusal to voluntarily submit information pursuant to an investigation, the Commission resorted to compulsory process and issued a subpoena ad testificandum to the Board's Chairman and a subpoena duces tecum to the Board's Executive Secretary. The Board filed a petition to quash these subpoenas on January 16, 1985. The Commission granted the Board an oral hearing on the petition in Washington, D.C. on January 29, 1985. The hearing was held before a single FTC Commissioner, i.e., Commissioner Terry Calvani.[2] Commissioner Calvani denied the Board's petition to quash in a written decision dated February 11, 1985.
In the second paragraph of the opinion, Commissioner Calvani directed the Board's attention to FTC Rule 2.7(f), which provides for a three day period within which to file a request with the Secretary of the FTC for a full Commission review. Commissioner *1158 Calvani also referred to a notice found in the Federal Register which explicitly stated that full Commission review of an initial ruling would be available only "if a request for a review is received within three days after service of the ruling." 49 Fed.Reg. 6089 (February 17, 1984).
The Board submitted a request for a full Commission review of Commissioner Calvani's decision. This request was mailed on February 14, 1985, and received by the Commission on February 19, 1985  the first working day following the three-day time period established by Commission Rule of Practice 2.7(f). The Commission denied the Board's request for a full Commission hearing on March 8, 1985. The full Commission cited the Board's failure to timely file its request as the reason for refusing to review Commissioner Calvani's decision.
The Commission set March 14, 1985, as the deadline for compliance with its subpoenas. On March 13, 1985, the Board filed a motion for a rehearing on its request for a full Commission review of Commissioner Calvani's decision. That motion was denied by the Commission on March 22, 1985. The Board filed this complaint on March 28, 1985. Thereafter, the Commission filed a request for documents with the Board pursuant to the North Carolina Public Records Act, N.C.Gen.Stat. §§ 132-1 through -9 (1981). The Board has complied with this request.

APPLICABLE LAW
The Board's complaint effectively contains two causes of action. The Board alleges a deprivation of its constitutional right to due process of law, and also maintains that Rule 56.0701(e)(8) is exempt from FTC investigation. The latter claim arises under two separate theories, i.e., that the rule in question does not affect interstate commerce, and that the rule constitutes "state action" exempt from antitrust scrutiny pursuant to Parker v. Brown and its progeny.

A. Due Process Claim

The court considers the Commission's motion to dismiss the Board's due process claim to be a 12(b)(6) motion to dismiss for failure to state a claim: the court has subject matter jurisdiction over these claims by virtue of the constitutional implications which they raise. Since this motion was accompanied by affidavits and exhibits, the court will treat it as a motion for summary judgment. Fed.R.Civ.P. 12(b)(6).
The Board alleges that the processing and denial of its request for a full Commission review of Commissioner Calvani's order deprived the state agency of its right to due process as guaranteed by the fifth amendment. The Board cites the short amount of time (three days) within which the request for review must be received by the Commission in Washington, as well as the Commission's failure to apprise the Board of FTC Rule of Practice 4.4(b) which specifically stated that the three day time period referred to receipt of the request (as opposed to mere mailing of the same). See 16 C.F.R. § 4.4(b) (1985).
Prior Supreme Court cases foreclose any constitutional argument the Board may make in this case. The Due Process Clause is not offended when an administrative agency uses its subpoena power to gather evidence adverse to an individual or entity. SEC v. Jerry T. O'Brien, Inc., ___ U.S. ___, 104 S.Ct. 2720, 2725, 81 L.Ed.2d 615 (1985). The Due Process Clause is not implicated because an administrative investigation does not adjudicate legal rights. Id. See also Hannah v. Larche, 363 U.S. 420, 440-43, 80 S.Ct. 1502, 1513-15, 4 L.Ed.2d 1307 (1959). In the case at bar, the administrative proceedings are still in an investigative stage, and the Board's legal rights are not being adjudicated. Moreover, the Commission's subpoenas are not self-enforcing; the Board will not subject itself to penal sanctions until the Commission attempts to enforce the subpoenas in federal district court. See 15 U.S.C.A. § 49 (1973 & Supp.1985). Consequently, the court finds that the Board's procedural due process claim fails *1159 to state a claim upon which relief may be granted. The Commission's motion to dismiss is therefore granted as to the Board's fifth amendment claim.

B. Exemption Claim

As a general rule, a private party may not bypass the specific statutory scheme enacted by Congress for judicial review of adverse agency action. General Finance Corp. v. FTC, 700 F.2d 366, 368 (7th Cir.1983). Consequently, a party may not obtain review of an agency decision by circumventing the Administrative Procedure Act's[3] review provisions via a request for declaratory or injunctive relief pursuant to 28 U.S.C. § 1331 or § 1337. See id. However, there exists a notable exception to this general rule requiring adherence to congressionally created judicial review procedures. If an agency acts in "brazen defiance" of its statutory authorization, courts will entertain a cause of action based on § 1331 or § 1337 jurisdiction. Phillip Morris, Inc. v. Block, 755 F.2d 368, 369-70 (4th Cir.1985). This exception enables courts to preserve the status quo, to prevent infringement of substantial rights that might otherwise be sacrificed, and to protect against the subversion of congressional policy. See Mayor and City Council of Baltimore v. Mathews, 562 F.2d 914, 920 (4th Cir.1977). See also Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958).
Pursuant to the APA, judicial review is appropriate only where agency action is made reviewable by statute or where "final agency action" is taken for which there is no other adequate remedy at law. 5 U.S.C.A. § 704 (1977). Since the FTCA does not specifically provide for judicial review of Commission action, the Board relies on the Act's "final agency action" language in arguing that the court has subject matter jurisdiction in this case. The Supreme Court interpreted the "final agency action" provision of § 704 in Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Toilet Goods Association v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697, and Gardner v. Toilet Goods Association, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). As a consequence of the Abbott Laboratories trilogy, agency action previously categorized as "non-final" is now considered to be "final" and reviewable pursuant to § 704 if that action is ripe for judicial review. General Finance, 700 F.2d at 371.[4]
The APA also provides that any applicable form of legal action is available to a litigant in a court of competent jurisdiction should a court find the agency action to be "final" and should the court determine that the special statutory review proceedings are inadequate. 5 U.S.C.A. § 703 (1977). If the adverse administrative decision is ripe for review, § 703 allows a litigant to move under §§ 1331 and 1337 for declaratory and injunctive relief. These latter two sections then provide a court with jurisdiction to entertain a suit in appropriate circumstances.
Abbott Laboratories and its progeny are cases in which the jurisdiction of the agency to promulgate the contested regulations was unquestioned. The agency in Abbott Laboratories was unquestionably acting within its statutory authority; the issue presented in that case involved allegedly erroneous agency action. See Gardner v. Toilet Goods Association, 387 U.S. at 175-76, 87 S.Ct. at 1530-31 (Fortas, J., dissenting). See also FTC v. Standard Oil Company of California, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) [hereinafter "SOCAL"] (authority of FTC to issue subpoena not questioned). In this context judicial review is based on the APA. While *1160 Abbott Laboratories allows a party to bring suit under § 1331 or § 1337, the litigant's ability to bring such an action is actually based upon the APA, i.e., 5 U.S.C. §§ 703, 704. See General Finance, 700 F.2d at 371 (Abbott Laboratories merely a gloss on § 704).
A different question arises when an agency is accused of acting ultra vires, i.e., in excess of its delegated powers and contrary to a prohibition in its authorizing statute. In this context, the appropriate inquiry centers upon the boundaries of an agency's enabling statute and determines whether the agency acted within those boundaries. When agency jurisdiction itself is questioned, judicial review is not based on the APA, but upon independent sources of jurisdiction such as 28 U.S.C. §§ 1331 and the Constitution (particularly the separation of powers doctrine).[5] In Leedom v. Kyne, plaintiff, president of a union of professional employees, alleged that the National Labor Relations Board had violated the National Labor Relations Act. The NLRB allegedly violated the Act by certifying as a collective bargaining representative a unit consisting of both professional and non-professional employees without first allowing the former to vote on whether to be included with the latter in the same unit. 358 U.S. at 185-86, 79 S.Ct. at 182. The Court noted: "Th[e] suit is not one to `review,' in the sense of that term as used in the Act, .... rather, it is one to strike-down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition of the act." Id. at 188, 79 S.Ct. at 183.
In short, when one conducts an Abbott Laboratories "ripeness" inquiry, one is conducting review within the statutorily created review process found in the APA. A Leedom-type inquiry, however, constitutes judicial review outside the APA's ambit. See Mathews, 562 F.2d at 920. But see General Finance, 700 F.2d at 371. Consequently, a court need not conduct a separate Abbott Laboratories inquiry into ripeness to gain subject matter jurisdiction when faced with a situation analogous to Leedom. Conversely, "brazen defiance" of a statute is not a prerequisite to finding a case to be "ripe" for review within the meaning of Abbott Laboratories.
In the present case, there are two issues placed before the court. First, the court must determine whether the Commission is acting in excess of its jurisdictional parameters. Second, the court must decide whether the Commission's issuance of a subpoena ad testificandum and a subpoena duces tecum, even if within the agency's jurisdictional authority, constituted "final agency action" now ripe for judicial review. The court will address each inquiry separately.
Neither of the Board's two reasons for asserting lack of Commission jurisdiction in this case establishes a case of unauthorized agency action amounting to brazen agency defiance of the FTCA. The Board first argues that Rule 56.0701(e)(8) affects only intrastate commerce. However, a mere allegation that conduct is intrastate in nature does not create a presumption that federal statutes and regulations based on the Commerce Clause power are inapplicable. Moreover, such a presumption is especially inappropriate in instances, like in the case at bar, in which the issue has been presented in a cursory fashion.[6] Finally, the court notes that the term *1161 "interstate commerce" has been given an expansive definition in similar situations. See McLain v. Real Estate Board, 444 U.S. 232, 242, 100 S.Ct. 502, 509, 62 L.Ed.2d 441 (1980); Goldfarb v. Virginia State Bar, 421 U.S. 773, 783-86, 95 S.Ct. 2004, 2011-13, 44 L.Ed.2d 572 (1975). Considering all these factors, the court concludes that the Commission's refusal to find that Rule 56.0701(e)(8) affects only intrastate commerce does not, as a matter of law, constitute brazen defiance of the FTCA.
The Board's next contends that its exercise of authority in promulgating and adopting Rule 56.0701(e)(8) constitutes "state action" exempt from FTC regulation under the Parker doctrine. The court concludes that the Commission's initial rejection of the Board's Parker defense does not constitute agency action done in brazen defiance of the FTCA.
The FTCA authorizes the Commission "to gather and compile information concerning, and to investigate ... any person, partnership, or corporation engaged in or whose business affects commerce...." 15 U.S.C. § 46(a) (1976). States acting within their sovereign capacities are not included within the jurisdiction of the antitrust statutes. Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). However, the standard for determining whether the conduct of a nonsovereign state representative is exempt from antitrust regulation is presently in issue. In California Retail Liquor Dealers Association v. Midcal Aluminum, Inc., the Supreme Court held that actions allegedly exempt under the Parker doctrine must be based on a clear articulation of state policy and must be actively supervised by the state. 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). See also Hoover v. Ronwin, 466 U.S. 558, 104 S.Ct. 1989, 1994, 80 L.Ed.2d 590 (1985). However, that two-prong standard may be partially inapplicable to a state agency. See Town of Hallie v. City of Eau Claire, ___ U.S. ___, 105 S.Ct. 1713, 1720 n. 10, 85 L.Ed.2d 24 (1985). Furthermore, it is questionable whether a state agency need show "compulsion" to satisfy the "clear articulation" prong of Midcal. See Southern Motor Carriers v. United States, ___ U.S. ___, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985).
Clearly, the law in this area is presently rather unsettled. Moreover, this case does not present a situation analogous to that found in Leedom, in which an explicit and unambiguous statutory prohibition was clearly violated. See Leedom, 358 U.S. at 188-89, 79 S.Ct. at 183-84. Under similar circumstances, a circuit court has refused to allow jurisdiction under the Leedom "brazen defiance" standard. See General Finance, 700 F.2d at 370 (FTC not acting in brazen defiance of statute where it uncertain whether Commission exceeded authority and where Commission did not flout clear legislative directive). This court likewise will not entertain the Board's action under a "brazen defiance" analysis since the Commission has not violated a clear and explicit statutory prohibition and the case law setting the parameters of that agency's authority is presently unsettled.
Having determined that subject matter jurisdiction cannot be obtained using a Leedom analysis, the pertinent question becomes whether the holding in Abbott Laboratories can be used to establish the court's jurisdiction through 28 U.S.C. §§ 1331 and 1337 by way of §§ 10(b) and (c) of the APA (i.e., 5 U.S.C. §§ 703, 704). The court notes that the Board's contentions, aside from its due process claims, allege a lack of Commission authority and an exercise of authority in excess of its delegated powers. There is no argument that the Commission, while acting within its authority, erroneously promulgated a rule or initiated an investigation requiring immediate judicial review.
Under these circumstances, it is questionable whether Abbott Laboratories applies; that case and its progeny dealt with private parties whom were clearly within the "person, partnership and corporation" category of entities subject to FTC regulation. Cf. Abbott Laboratories, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Gardner v. Toilet Good Association, 387 *1162 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967); Wearly, 616 F.2d 662 (3rd Cir.1980); Atlantic Richfield Co. v. FTC, 546 F.2d 646 (5th Cir.1977). The Court in Abbott Laboratories conducted its ripeness inquiry only after determining that it possessed subject matter jurisdiction to hear the case. 387 U.S. at 141, 148, 87 S.Ct. at 1511, 1515. See also SOCAL, 449 U.S. at 239-43, 101 S.Ct. at 493-95 (agency action found to lack finality within meaning of § 704 without referring to ripeness test enunciated in Abbott Laboratories). The ripeness test was used to determine whether the Court should exercise its discretion to hear the petitioner's request for declaratory and injunctive relief. 387 U.S. at 149, 87 S.Ct. at 1515. As this test is not grounded upon jurisdictional concerns but rather upon the equitable relief requested, a genuine question exists as to whether a ripeness inquiry is required in this case.
Yet other courts have considered the ripeness analysis to be a prerequisite to establishing subject matter jurisdiction. See General Finance, 700 F.2d 366 (7th Cir.1983) (applying both Leedom and Abbott Laboratories analyses where plaintiff insurance companies argued lack of agency jurisdiction over them pursuant to McCarran-Ferguson Act  both jurisdictional questions seen as rising from Abbott Laboratories gloss on § 704); Wearly, 616 F.2d at 665-68. In any event, this court must determine whether the Commission's actions constitute "final agency action" for which there exists no other adequate remedy at law even if the Abbott Laboratories gloss on § 704 is not adopted. 5 U.S.C.A. § 704 (1977).
As in General Finance, the court is unable to find subject matter jurisdiction even under an Abbott Laboratories analysis. The Commission's issuance of compulsory process to the Board, combined with the agency's denial of the Board's petition to quash, do not raise questions which are ripe for review so as to constitute "final agency action." A matter is ripe for review only if: (1) the issue before the court is presently fit for resolution so that further proceedings are not needed to give sharp focus to the controversy at bar; and (2) the parties would suffer actual hardship in the event the court were to withhold judicial review. See Abbott Laboratories, 387 U.S. at 149, 87 S.Ct. at 1515; General Finance, 700 F.2d at 371; Wearly, 616 F.2d at 666.
Regardless of whether the hardship factor can be satisfied, the court must determine whether the question regarding the Board's Parker immunity is presently fit for judicial resolution.[7] In order to be fit for resolution, the action complained of must be "final", i.e., a definitive statement of the pertinent agency's position. SOCAL, 449 U.S. at 239-40, 101 S.Ct. at 493. See also Wearly, 616 F.2d at 666. The court concludes that the Commission's actions do not constitute a definitive agency statement, and for this reason the plaintiff's claim is not ripe for review at this time.
*1163 The Commission's issuance of subpoenas to the Board is not "final" agency action as defined in SOCAL. The agency's issuance of the two subpoenas, neither of which is self-enforcing, does not comprise a definitive statement of position. At present, these subpoenas do not have any immediate effect on the Board's daily operations. See SOCAL, 449 U.S. at 242-43, 101 S.Ct. at 494-95. There is no guarantee that the Commission will move the court to enforce these subpoenas pursuant to 15 U.S.C. § 49.
Commissioner Calvani also explicitly stated that the Commission presently lacks the information needed to determine whether Rule 56.0701(e)(8) affects interstate commerce. As mentioned earlier, the Commissioner's ruling was issued prior to the Supreme Court's recent holdings in Town of Hallie and Southern Motor Carriers. Given these two recent decisions, and the fact that the Commissioner's ruling was not reviewed on its merits by the full Commission, the possibility exists that the Commission's position regarding the state action question may change. Finally, the Commissioner noted that his refusal to grant the Board's petition to quash was based partially on the Commission's reluctance to determine jurisdictional issues at a preenforcement stage.
Irrespective of the merits of the Board's Parker and interstate commerce arguments, the Commission's refusal to hear the Board's petition en banc, combined with the agency's use of compulsory process which is not self-enforcing, do not amount to final agency action. The Commission's actions to date do not constitute a definitive statement of the agency's position; nor do its actions have any legal force or practical effect upon the Board's daily business. See SOCAL, 449 U.S. at 239-40, 243, 101 S.Ct. at 493, 494. The servicing of subpoenas to the Board, in short, "represents a threshold determination that further inquiry is warranted." Id. at 241, 101 S.Ct. at 493. See also Wearly, 616 F.2d at 666 (agency action final only if no further action contemplated). For these reasons, the issue before the Court is presently not fit for judicial resolution and the matter is not ripe for review at this time.

CONCLUSION
Because the Commission's actions do not constitute "final agency action" within the meaning of § 704, and because the Commission is not acting in clear or brazen defiance of its statutory authority, the court does not possess subject matter jurisdiction to entertain the Board's non-constitutional claim. Cf. General Finance, 700 F.2d at 372. Accordingly, the Commission's motion to dismiss the Board's exemption claim is GRANTED. The Commission's motion to dismiss the Board's fifth amendment claim is likewise GRANTED.
NOTES
[1] Federal Trade Commission Act, §§ 1 et seq., 15 U.S.C.A. §§ 41 et seq. (1973 & Supp.1985).
[2] A recent amendment to FTC regulations provided for such initial hearings to be held before a single Commissioner. 16 C.F.R. § 2.7(d)(3) (1985).
[3] Administrative Procedure Act, [hereinafter "APA"], §§ 1 et seq., as amended 5 U.S.C.A. §§ 551-59, 701-06 (1977 & Supp.1985).
[4] Judicial review would be precluded if the authorizing agency statute (in this case, the FTCA) prohibited preenforcement review. The Act, however, does not proscribe such review. Wearly v. Federal Trade Commission, 616 F.2d 662 at 666 (3rd Cir.1980).
[5] A separation of powers issue arises in circumstances wherein an agency acts in excess of authority delegated to it by Congress. Where a legislative grant of authority is involved, an administrative agency, as an arm of the executive branch, cannot itself legislate a broader authorizing statute than that given by Congress. "[T]he role of the agencies remains basically to execute legislate policy; they are not more authorized than the courts to rewrite acts of Congress." Talley v. Mathews, 550 F.2d 911, 919 (4th Cir.1977). This same principle also holds true for independent agencies such as the FTC. See, e.g., Int'l Bhd of Teamsters v. Daniel, 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979); Office of Consumer Counsel v. FERC, 655 F.2d 1132, 1152 (D.C.Cir.1980).
[6] Commissioner Calvani noted that there is not yet sufficient information available with which to resolve whether Rule 56.0701(e)(8) affects only intrastate commerce.
[7] Assuming arguendo that the Board is entitled to an exemption pursuant to Parker v. Brown, the court is satisfied that the Commission's issuance of compulsory process itself would constitute a hardship of sufficient degree and immediacy to meet the "hardship" element of the ripeness test. Intrusion upon the intricate balance between the federal and state systems, and the accompanying degredation of state sovereignty, is a wrong that constitutes immediate injury to our constitutional and federal system of government. Such a wrong warrants judicial action at even a preenforcement stage of administrative action.

The Commission cites a host of cases which deny preenforcement relief to private parties due to those parties' failure to show any hardship caused by the agency action in question. The court finds these cases to be easily distinguishable. The Commission fails to recognize that private parties are not susceptible to the type of immediate injury that the Board, and indeed our constitutional system of government, would suffer should it be deemed a state entity. Thus, those cases noting a lack of any hardship to the private parties bringing suit are not dispositive on this issue. Although the Commission would like the court to believe differently, Garcia v. San Antonio Metropolitan Transit Authority, ___ U.S. ___, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) does not write the tenth amendment out of the Constitution.