NATIONAL LABOR RELATIONS BOARD, Applicant,

v.

VISTA DEL SOL HEALTH SERVICES, INC. d/b/a Vista Del Sol Healthcare, Respondent.

Vista Del Sol Health Care Services, Inc. dba Vista Del Sol Healthcare, a California Corporation, Plaintiff,

v.

National Labor Relations Board, Region 31, 11500 W. Olympic Boulevard, Suite 600 Los Angeles, CA 90064; and Does 1 through 25, inclusive, Defendants.

Case Nos. CV 14–03337 MMM (FFMx), CV 14–02193 MMM (FFMx).

United States District Court, C.D. California.

Signed July 7, 2014.

Brian Dean Gee, Joanna F. Silverman, Juan Carlos Ochoa Diaz, Los Angeles, CA, Jessica Rutter, National Labor Relations Board, Washington, DC, for Applicant.

Yolanda Flores–Burt, Yolanda Flores–Burt Law Offices, Santa Ana, CA, for Respondent.

ORDER GRANTING IN PART AND DENYING IN PART THE NLRB'S APPLICATION FOR ORDER COMPELLING RESPONDENT'S COMPLIANCE WITH ADMINIS-TRATIVE SUBPOENAS *DUCES TECUM*

ORDER GRANTING THE NLRB'S MO-TION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDIC-TION

MARGARET M. MORROW, District Judge.

On March 21, 2014 Vista del Sol Health Care Services, Inc. ("Vista") filed Case No. CV 14–02193 MMM (FFMx) (*Vista*), against the National Labor Relations Board, Region 31 ("the NLRB" or "the Board"), seeking a declaration that two subpoenas *duces tecum* issued by the NLRB are invalid and an injunction against their enforcement.[1] On May 7, 2014, the NLRB filed a motion to dismiss the case for lack of jurisdiction.[2] Vista opposes the motion.[3]

---

1. Complaint, Case No. CV 14–02193, Docket No. 1 (Mar. 21, 2014).

2. Motion to Dismiss for Lack of Jurisdiction ("Motion"), Case No. CV 14–02193, Docket No. 15 (May 7, 2014).

3. Opposition to Motion to Dismiss for Lack of Jurisdiction ("Motion Opp."), Case No. CV 14–02193, Docket No. 20 (June 16, 2014).

On April 30, 2014, the NLRB filed Case No. CV 14–03337 MMM (FFMx) (*NLRB*), seeking an order requiring Vista to comply with the same two subpoenas.[4] The case was originally assigned to Judge Stephen Wilson but was transferred to this court as a case related to *Vista*.[5] Vista opposes the NLRB's application.[6]

## I. FACTUAL BACKGROUND

### A. Facts Adduced by the Parties with Respect to the Board's Application

Vista operates a skilled nursing facility. Between October 18 and December 9, 2013, the Service Employees International Union, United Long Term Care Workers ("SEIU") filed fifteen charges with the Board alleging that Vista had engaged in unfair labor practices in violation of Section 8(a)(1) and (3) of the National Labor Relations Act ("the NLRA"), 29 U.S.C. § 158(a)(1) and (3).[7] The SEIU asserted that Vista had discharged employees in retaliation for pro-union activities, laid off employees pursuant to an unlawful subcontract with a company called Pro–Clean because the employees supported the un-

ion, changed certain terms and conditions of employment to retaliate against employees for supporting the union, and restrained and/or coerced employees in the exercise of their right to unionize by, *inter alia,* interrogating employees, polling them, threatening them, prohibiting employees from wearing union colors and/or insignia, engaging in surveillance of employees' union activity, and creating the impression that employees' union activity was under surveillance.[8]

After receiving the charges, the NLRB began to investigate the union's claims; as part of this investigation, it requested that Vista complete a Questionnaire on Commerce Information so that the Board could determine whether it had jurisdiction over Vista.[9] On October 23, 2013, Vista returned a copy of the questionnaire to the Board.[10]

On November 10 and December 20, 2013, the Board's attorney, John Rubin, sent letters to Vista's attorney, Yolanda Flores–Burt, requesting that Vista present evidence responding to the allegations set forth in the charge.[11] On November

---

**4.** Application for Order Requiring Compliance with Administrative Subpoenas *Duces Tecum* ("Application"), Case No. CV 14–03337, Docket No. 1 (Apr. 30, 2014).

**5.** Order re Transfer Pursuant to General Order 08–05, Case No. CV 14–03337, Docket No. 9 (May 9, 2014).

**6.** Opposition to Application for Order Requiring Compliance with Administrative Subpoenas *Duces Tecum* ("Application Opp."), Case No. CV 14–03337, Docket No. 10 (May 12, 2014).

**7.** Declaration of Juan Carlos Ochoa Diaz ("Diaz Decl."), Case No. CV 14–03337, Docket No. 3 (Apr. 30, 2014), ¶ 3, Exh. 1 (October and December 2013 Charges against Vista ("Charges")). Section 158(a)(1) makes it "an unfair labor practice for an employer [ ] to interfere with, restrain, or coerce employees

in the exercise of the rights guaranteed in section 157." 29 U.S.C. § 158(a)(1). Section 158(a)(3) makes it "an unfair labor practice for an employer ... by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." *Id.*, § 158(a)(3).

**8.** Application, Exh. 1 (Charges at 12–26).

**9.** Diaz Decl., ¶ 4.

**10.** *Id.*, ¶ 4; Application, Exh. 2 (October 23, 2013 Questionnaire on Commerce Information ("First Questionnaire")).

**11.** Diaz Decl., ¶ 5; Application, Exh. 3 (November 10, 2013 and December 20, 2013 Letters to Flores–Burt re: Submission of Evidence).

27, 2013 and January 7, 2014, Vista submitted position statements and evidence to the Board.[12] Specifically, it submitted its employee handbook; minutes of May 23, October 16, and October 18, 2013 staff meetings regarding Vista's attendance and tardiness policy; portions of employee reprimand and termination documents culled from employee files; an October 3, 2013 Service Agreement between Vista and Pro–Clean; copies of letters written by employees regarding pressure exerted on them by co-workers and the SEIU; selected employee time records for the period from June to October 2013; and a letter and photograph taken by the son of a recently deceased resident of Vista.[13] The photograph depicts two individuals sleeping in chairs and covered in sweaters and blankets. These individuals were later terminated.

In its position statements, Vista stated that the individuals in the photographs had been terminated not for pro-union activity, but for sleeping on the job.[14] It also stated that its subcontract with Pro–Clean was not unlawful because the negotiations that preceded entry into the subcontract had commenced as early as August 2013—before it claims it knew about the unionization efforts—and because Vista had entered into the contract for rational business reasons, not to stymy union activity and retaliate against pro-union employees.[15] Vista also argued that it had not changed the terms and conditions of its employees' working conditions.[16] It stated that its employee handbook had always provided that tardiness could result in disciplinary action, including termination,[17] but that it had nonetheless adopted a practice of allowing nurses a "grace period" of seven minutes to clock in at the beginning of their shifts. The company asserted that it had learned that some nurses had been clocking out before their replacements clocked in, which left patients unattended and at risk.[18] For that reason, it said, it had held staff meetings—which happened to coincide with the date on which the SEIU had filed a petition to unionize Vista's employees [19]—during which it told its employees that because nurses were no longer waiting to clock out until their replacements had clocked in, it would begin to enforce the tardiness policy strictly and would no longer follow its practice of allowing a seven-minute grace period.[20]

On December 12, 2013, Rubin emailed Flores–Burt regarding deficiencies the Board had noted in the questionnaire submitted on October 23, 2013.[21] Rubin advised Flores–Burt that the questionnaire she had submitted was illegible and incomplete.[22] He asked that she complete a new

---

**12.** Diaz Decl., ¶ 6; Application, Exh. 4 (November 27, 2013 and January 7, 2014 Letters to the Board re: Submission of Evidence).

**13.** Application, Exh. 4 (November 27 Letter).

**14.** *Id.*, Exh. 4 at 46 (November 27 Letter at 6).

**15.** *Id.*, Exh. 4 at 48–49 (November 27 Letter at 8–9).

**16.** *Id.*, Exh. 4 at 41–42 (November 27 Letter at 1–2).

**17.** *Id.*

**18.** *Id.*

**19.** As noted below, Vista alleges that the SEIU filed its petition for union certification on October 17, 2013. It held the three staff meetings on May 23, October 16, and October 18, 2013. (*Id.* at 75–77.)

**20.** *Id.*

**21.** Diaz Decl., ¶ 7; Application, Exh. 5 (December 12, 2013 Emails from Rubin to Flores–Burt ("December 12 Emails")).

**22.** Diaz Decl., ¶ 7; Application, Exh. 5 (December 12 Emails).

questionnaire and gave her a link to the more updated version.[23] Flores–Burt, however, failed to resubmit the questionnaire. On December 19, 2013, the Board issued and served the first of the subpoenas at issue, B–712357.[24] The subpoena directed Vista's custodian of records to appear before the Board on December 26, 2013, and produce four categories of documents the Board believed relevant in determining whether it had jurisdiction over Vista:

1) Vista's articles and certificate of incorporation;

2) "The names, titles, and addresses of all persons serving on the board of directors and/or as officers of [Vista]";

3) Vista's stock subscription books, stock transfer books, share registers, and other records reflecting the identity of Vista's shareholders and the amount of shares they own; and

4) "[F]inancial statements, balance sheets, profit and loss statements, auditor's reports, cash books, bank statements, tax records, deposit books, check stubs, vouchers, cancelled checks, bills, ledgers, and other books of account . . . that show for the preceding 12 months or for the Employer's last fiscal year:

 a. The value and nature of goods, materials and/or services purchased by the Employer directly from sources located outside of the State of California together with the names and addresses of all such sources and the dollar amounts purchased from each;

 b. The value and nature of goods, materials and/or services purchased by the Employer from business enterprises located within the State of California together with the names and addresses of all such business enterprises and the dollar amounts purchased from each; and

 c. The value and nature of goods, materials and/or services sold by the Employer directly to persons and to business enterprises located outside the State of California together with the names and addresses of all such persons and business." [25]

Vista did not comply by the return date. Rather, on January 3, 2014, it filed a petition to revoke the subpoena.[26] Simultaneously, it sent the Board a letter in which it reiterated its objections to the subpoena. Nonetheless, Vista produced its Statement of Information, filed with the California Secretary of State, which contains the name and address of Vista's sole officer and director, James Preimesberger.[27] It also submitted a new questionnaire.[28] Although the questionnaire was legible the Board asserts it was incomplete.[29] On January 9, 2014, the Regional Director of Region 31 of the Board ("Regional Di-

23. Diaz Decl., ¶ 7; Application, Exh. 5 (December 12 Emails).

24. Diaz Decl., ¶ 8; Application, Exh. 6 (Subpoena *Duces Tecum* B–712357 ("B–712357")).

25. Diaz Decl., ¶ 8; Application, Exh. 6 (B–712357).

26. Diaz Decl., ¶ 9; Application, Exh. 7 (Vista's Petition to Revoke Subpoena *Duces Tecum* B–712357 ("First Petition to Revoke")).

27. Diaz Decl., ¶ 9; Application, Exh. 8 (January 3, 2014 Letter from Flores–Burt to Rubin ("January 3 Letter")).

28. Diaz Decl., ¶ 9; Application, Exh. 8 (January 3 Letter).

29. Diaz Decl., ¶ 9.

rector") issued an order referring Vista's petition to revoke the subpoena to the Board.[30] The same day, Rubin filed opposition to the petition.[31]

On January 6, 2014, the Board issued and served a second subpoena *duces tecum*, B–712366.[32] This subpoena directed Vista's custodian of records to appear before the Board on January 14, 2014, and produce twenty-two categories of documents the Board believed relevant to the charges filed by the SEIU:

"1. For the period commencing October 31, 2011 and continuing to present, documents reflecting all written workplace attendance and tardiness policies and documents reflecting that these policies were communicated and/or distributed to employees, either orally or in writing."

2. For the period commencing October 31, 2011 and continuing to present, documents reflecting employee acknowledgment and receipt of all employee handbooks.

3. Copies of the 'Employee Acknowledgment Form' from the November 1, 2011 employee handbook signed and dated by employees.

4. For the period commencing October 31, 2011 and continuing to present, time-records for employees Dafny Cobar, Lerma Davis, Maria Ramirez, Ivania Rueda, Elisa Mayorga, Marta Aparicio, Rosa Lopez, Genaro Meza, Delfina Sanchez, Maria Rodriguez, and Carmelina Perdomo.

5. For the period commencing October 31, 2011 and continuing to present, documents reflecting all warnings, disciplines, and discharges for violations of the Employer's attendance and tardiness policies.

6. Documents reflecting the complete disciplinary history for employees Marta Aparicio, Delfina Sanchez, and Maria Lopez.

7. Documents relating to the investigation of the incident in about September and/or October 2013 in connection with which employees Marta Aparicio and Delfina Sanchez were discharged ('the incident'), including all emails, notes and memoranda related to the same, and also reflecting all investigation related to the conduct of Jennifer Abunza and Maria Lopez related to the incident.

8. Documents reflecting the reasons as to why Jennifer Abunza and Maria Lopez were not disciplined and/or discharged in connection with the incident.

9. Documents reflecting whether Maria Lopez is currently employed by the Employer.

10. If Maria Lopez is not currently employed by the Employer, documents reflecting the date of her voluntary separation, discharge, and/or lay-off from employment with the Employer.

11. For the period commencing October 31, 2011 and continuing to present, documents reflecting all disci-

---

30. *Id.*, ¶ 11; Application, Exh. 9 (January 9, 2014 Order Referring Petition to Revoke Subpoenas *Duces Tecum* to the NLRB ("January 9 Order")).

31. Diaz Decl., ¶ 12; Application, Exh. 10 (Opposition to Vista's Petition to Revoke Subpoe-na *Duces Tecum* ("First Petition to Revoke Opp.")).

32. Diaz Decl., ¶ 13; Application, Exh. 11 (Subpoena *Duces Tecum* B–712366 ("B–712366")).

plinary policies, including whether such policies were cumulative and/or progressive, and documents reflecting that these policies were communicated and/or distributed to employees, either orally or in writing.

12. For the period commencing October 31, 2011 and continuing to present, all policies regarding sleeping at work and other similar conduct, and documents reflecting that these policies were communicated and/or distributed to employees, either orally or in writing.

13. For the period commencing October 31, 2011 and continuing to present, documents reflecting all warnings, disciplines, and discharges for violation of Employer's policies regarding sleeping at work and other similar conduct.

14. Documents reflecting whether Marta Aparicio and/or Delfina Sanchez were scheduled to work during October and November 2013.

15. Lay-off and/or termination notices for employees Dafny Cobar, Romana Lopez, Elisa Mayorga, Maria Menjivar, Genaro Meza, Carmelina Perdomo, and Rosa Lopez.

16. For the period commencing October 31, 2011 and continuing to present, documents reflecting communications with Proclean, including emails, notes and memoranda regarding actual and/or potential performance of services for the Employer.

17. Documents reflecting the reason(s) and/or business justification for the Employer's decision to subcontract with Proclean.

18. Documents reflecting all employees hired by the Employer since October 14, 2013, including names, complete contact information, titles and job descriptions.

19. Documents reflecting the identity of all individuals who have performed work at the Employer's facility pursuant to the subcontracting agreement with Proclean.

20. Documents reflecting whether employee Roman Lopes is still employed and/or has performed any work at the Employer's facility since October 25, 2013.

21. All versions and/or iterations of employee schedules for housekeeping and maintenance for the months of September, October, November and December 2013 that were posted, distributed, and/or communicated to employees at the Employer's facility, including copies of any schedules reflecting that Dafny Cobar, Romana Lopez, Elisa Mayorga, Maria Menjivar, Genaro Meza, Carmelina Perdomo, and Rosa Lopez were scheduled to work during October, November and December 2013.

22. Documents showing the participation of Ester Cuellar, Jerri Warner, Vida and/or Vera Zelaya, Ingrid Castillo, and Jennifer Abunza, in the following actions concerning Employer's employees for the period October 31, 2011 to the present:

a. Hiring;

b. Transferring;

c. Suspending;

d. Disciplining;

e. Laying off;

f. Recalling;

g. Promoting;

h. Discharging;

i. Assigning work;

j. Rewarding;

k. Scheduling or granting time off;

l. Assigning overtime;

m. Adjusting grievances;

n. Directing work; and/or

o. Evaluating." [33]

On January 14, 2014, Vista filed a petition to revoke the subpoena.[34] On January 15, 2014, the Regional Director issued an order referring Vista's petition to revoke to the Board.[35] The same day, Rubin filed opposition to the petition.[36]

On February 27, 2014, the Board denied Vista's petition to revoke the first subpoena,[37] and on March 10, 2014, it denied Vista's petition to revoke the second subpoena.[38] Rubin then sent Flores–Burt emails asking that Vista comply with the subpoenas by appearing at his office on Monday, March 24, 2014 at 1:00 p.m.[39] Vista's custodian of records failed to comply with the subpoenas.[40] Instead, on April 3, 2014 Vista served the summons and complaint in *Vista* on the Board.[41]

## B. Facts Alleged in Vista's Complaint

Vista alleges that on October 17, 2013, the SEIU filed a petition for union certification with the NLRB, seeking to unionize its employees.[42] It contends that the following day, some of its employees reported that union representatives had visited their homes and harassed and intimidated them in an effort to get them to sign the petition for certification.[43] Vista asserts that it informed the NLRB that the union had obtained Vista's employee information by "highly questionable means," including harassment of employees who were not pro-union. Vista purportedly asked that the NLRB investigate the SEIU as a result[44] It contends that within a few days, the NLRB dismissed its concerns and allowed the SEIU to continue its practices.[45]

Vista alleges that the union then filed fifteen charges against it with the NLRB. It contends the charges are based on "frivolous allegations questioning Plaintiff's long established business practices and company policies,"[46] and asserts that, despite the "dubious nature" of the charges,

**33.** Application, Exh. 11 (B–712366).

**34.** Diaz Decl., ¶ 14; Application, Exh. 12 (Vista's Petition to Revoke Subpoena *Duces Tecum* B–712366 ("Second Petition to Revoke")).

**35.** Diaz Decl., ¶ 15; Application, Exh. 13 (January 15, 2014 Order Referring Petition to Revoke Subpoenas *Duces Tecum* to the NLRB ("January 15 Order")).

**36.** Diaz Decl., ¶ 16; Application, Exh. 14 ((Opposition to Vista's Petition to Revoke Subpoena *Duces Tecum* ("Second Petition to Revoke Opp."))).

**37.** Diaz Decl., ¶ 17; Application, Exh. 15 (February 27, 2014 Order Denying Vista's Petition to Revoke the First Subpoena *Duces Tecum* ("February 27 Order")).

**38.** Diaz Decl., ¶ 19; Application, Exh. 17 (March 10, 2014 Order Denying Vista's Peti-

tion to Revoke the Second Subpoena *Duces Tecum* ("March 10 Order")).

**39.** Diaz Decl., ¶¶ 18, 20; Application, Exhs 16 (March 5, 2014 Email from Rubin to Flores–Burt ("March 5 Email")), 18 (March 19, 2014 Email from Rubin to Flores–Burt ("March 19 Email")).

**40.** Diaz Decl., ¶ 21.

**41.** *Id.*, ¶ 22.

**42.** Complaint, ¶ 6.

**43.** *Id.*, ¶ 7.

**44.** *Id.*

**45.** *Id.*

**46.** *Id.*, ¶ 8.

the NLRB immediately commenced a "ferocious investigation" to assist the union's efforts.[47] Although Vista allegedly agreed to comply with the NLRB's December 12, 2013 request for a legible version of the questionnaire, the NLRB served the B–712357 subpoena.[48] On January 6, 2014, the NLRB served the B–712366 subpoena, which requested the same documents as those requested in the earlier subpoena and additional documents as well. Vista contends that the subpoenas exceed the scope of the issues raised in the charges and that they are so broad in scope that they violate Vista's employees' constitutional right to privacy.[49] It asserts that the Board wrongfully denied its petitions to revoke the subpoenas on these bases.[50]

## II. DISCUSSION

### A. The NLRB's Motion to Dismiss

### 1. Legal Standard Governing Rule 12(b)(1) Motions to Dismiss

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction to hear the claims alleged in the complaint. Such a motion may be "facial" or "factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004). Stated differently, a party mounting a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. See *White v. Lee*,

227 F.3d 1214, 1242 (9th Cir.2000); *Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*, 594 F.2d 730, 733 (9th Cir.1979).

As a general matter, "[i]n a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of ... allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. Whatever the nature of the challenge, the party seeking to sue in federal court bears the burden of establishing that the court has subject matter jurisdiction to hear the action. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Association of American Medical Colleges v. United States*, 217 F.3d 770, 778–79 (9th Cir.2000); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.1989).

The NLRB's jurisdictional attack is facial: for purposes of its Rule 12(b)(1) motion, the Board does not dispute the truth of the facts alleged in the complaint. Rather, it argues that the court lacks jurisdiction to adjudicate cases attacking the validity of subpoenas *duces tecum*. Although the NLRB has filed the declaration of its counsel and four exhibits supporting its motion to dismiss,[51] the court does not

---

47. *Id.*

48. *Id.*, ¶ 11.

49. *Id.*, ¶ 12.

50. *Id.*, ¶ 41.

51. See Declaration of Jessica Rutter in Support of Defendant's Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction ("Rutter Decl."), Case No. CV 14–02193, Docket No. 15–2 (May 7, 2014), Exh. A (Unfair Labor Practices Charges); *id.*, Exh. B (October 23, 2013 Letter from NLRB to Vis-

ta); *id.*, Exh. C (October 25, 2013 Commerce Questionnaire); *id.*, Exh. D (February 27, 2014 Board Order Denying Vista's Petition to Revoke Subpoena *Duces Tecum* B–712357). Although the court may consider some or all of these documents under the incorporation by reference doctrine, see *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir.1999) (noting that "the incorporation by reference doctrine permits a district court to consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] plead-

consider this evidence in deciding the motion; this is because, when a party makes a facial attack on jurisdiction, the court must accept the factual allegations in the complaint as true. See, e.g., *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004) ("A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction"); *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.1981) ("A motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), can be based on the lack of jurisdiction on the face of the complaint. If so, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised—the court must consider the allegations in the plaintiff's complaint as true"); *Munns v. Clinton*, 822 F.Supp.2d 1048, 1056 (E.D.Cal. 2011) ("If the motion constitutes a facial attack, the Court must consider the factual allegations of the complaint to be true").

■ The party invoking federal jurisdiction—here, Vista—bears the burden of establishing the existence of subject matter jurisdiction. See *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *In re Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir.2001); *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir.1996). At the pleading stage, this burden is satisfied by alleging facts that show a proper basis for jurisdiction. FED.R.CIV.PROC. 8(a)(1) (a complaint "shall contain a short and plain statement of the grounds upon which the court's jurisdiction depends"); see *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135

(1936) ("The prerequisites to the exercise of jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met. They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential to show jurisdiction").

■ The complaint must show "affirmatively and distinctly the existence of whatever is essential to federal jurisdiction, and if [it] does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495, 499 (9th Cir.2001). Since subject matter jurisdiction must be affirmatively alleged, courts will not infer allegations supporting the exercise of jurisdiction. See *Watson v. Chessman*, 362 F.Supp.2d 1190, 1194 (S.D.Cal.2005); see also *Tosco Corp.*, 236 F.3d at 499; *Century Southwest Cable Television, Inc. v. CIIF Assoc.'s*, 33 F.3d 1068, 1071 (9th Cir.1994).

### 2. Whether the Court Has Jurisdiction Over Vista's Complaint

■ There are generally two ways in which a court can review the Board's issuance of a subpoena, neither of which are satisfied by Vista's complaint. The first is upon application of the Board, under section 11(2) of the NLRA, which provides that

> "[i]n case of contumacy or refusal to obey a subp[o]ena issued to any persons, any district court of the United States ... within the jurisdiction of which the

ings' " (citing *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994))), it need not do so here because it finds them irrelevant in determin-

ing whether the court has subject matter jurisdiction over Vista's complaint.

inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by said court as a contempt thereof." 29 U.S.C. § 161(2).

In *Wilmot v. Doyle*, 403 F.2d 811, 812–15 (9th Cir.1968), the Ninth Circuit held that a district court had lacked jurisdiction under § 161(2) to enforce a subpoena upon the application of a company and the union against whom charges had been filed with the Board. The union had obtained the subpoena and served it on the field attorney representing the Board, seeking to require the attorney to produce material covering settlement negotiations, which the union argued would show that the Board had orally approved a settlement agreement. *Id.* at 813. When the attorney refused to comply with the subpoena, the union and the company filed a petition for enforcement of the subpoena in district court, which the court granted. *Id.* at 813–14. On appeal by the Board, the Ninth Circuit cited § 161(2) and held that "the Act provides that subp[o]enas will be enforced upon application by the Board [only] and not on application by private litigants. The courts consistently so hold." *Id.* at 814 (collecting cases); see also *Biazevich v. Becker*, 161 F.Supp. 261, 265 (S.D.Cal.1958) ("Plaintiffs are not entitled

by Section 11(2) of the Act to maintain this action. That section permits district court enforcement of subp[o]enas only upon suit of the Board, and not fo a private party. If the Board declines to institute an ex rel. proceeding for the enforcement of a subp[o]ena issued at the request of a private party the propriety of this action can be reviewed under Sections 10(e) and (f) of the Act ... and such action may not be made the basis for a private suit for injunction in the federal district court"). The *Wilmot* court went on to hold that "[t]here is sound logic to the statute[.] ... If private litigants, will nilly, could petition the district court, the courts might be flooded with such applications, and neither the Board nor the courts would have any control over such filings. Such petitions as here, would be used as delaying tactics." *Wilmot*, 403 F.2d at 814. Vista, not the Board, filed the complaint in this matter. Accordingly, the court lacks jurisdiction over Vista's complaint under § 161(2) because the action was not brought by the Board.

█ The second manner in which a court can review the validity of a subpoena is upon an aggrieved party's appeal of the Board's final order. See *Wilmot*, 403 F.2d at 814 (noting that private litigants could seek judicial review of the Board's refusal to enforce a subpoena "on either a petition to enforce or set aside the Board's final order under Sections 10(e) and 10(f) of the Act"). The NLRA provides that any person aggrieved by a final order of the Board in response to an unfair labor practice complaint may petition the court of appeals for review of that order. 29 U.S.C. § 160(f).[52] In other words, there is a general rule that the Board's orders are

---

**52.** Section 160(f) provides that "[a]ny person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business." 29 U.S.C. § 160(f).

not reviewable until the Board has issued its final order and once it has, the aggrieved party may appeal that order to the court of appeals, not to the district court. See *Cannery Warehousemen, Food Processors, Drivers and Helpers for Teamsters Local Union No. 748 v. Haig Berberian, Inc.*, 623 F.2d 77, 79 (1980) ("Normally, such a decision may not be reviewed by federal courts because a Board representation decision is not considered a reviewable 'final order' within the meaning of section 10(f) of the [NLRA]"). An order denying a petition to revoke a subpoena is not the Board's final order in an unfair employment practices action and the court therefore does not have jurisdiction over Vista's complaint under § 10(f) of the NLRA. *Id.* at 79 n. 1 (noting that the Board's final order in an unfair labor practices case is its "ruling on a claim of unfair labor practice"). In *Boire v. Greyhound Corp.*, 376 U.S. 473, 477–78, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964), the Supreme Court "acknowledged that the NLRA's provision for exclusive appellate review of Board action imposed significant delays upon attempts to challenge such action, but said that 'it is equally obvious that Congress explicitly intended to impose precisely such delays.'" *California Horse Racing*, 940 F.2d at 541 (citing *Boire*, 376 U.S. at 477–78, 84 S.Ct. 894).

In the absence of a final order or the Board's application to enforce a subpoena, a party may only obtain review of a Board's denial of a petition to revoke a subpoena—or of any other order of the Board that is not the final order—if the case "comes within the narrow exception to this rule of non-reviewability." *Id.* at 79; see also *N.L.R.B. v. California Horse Racing Board*, 940 F.2d 536, 540 (9th Cir. 1991) ("The Supreme Court has permitted only the narrowest of exceptions to the statutory scheme permitting review only of final Board orders by the courts of appeals"). The "narrow exception to th[e] rule of non-reviewability" was created by the Supreme Court in *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). There, the court held that the district court had subject matter jurisdiction to review the Board's certification of a bargaining unit in a representation action because plaintiff claimed that the Board acted "in excess of its delegated powers and contrary to a specific prohibition in the Act." *Id.* at 188, 79 S.Ct. 180. "Th[e] court held that sections 10(e) and (f) did not apply because the suit was not one to 'review . . . a decision of the Board made within its jurisdiction,'" but was, rather, a challenge to Board action alleged to have been in excess of the Board's powers. *California Horse Racing*, 940 F.2d at 540 (citing *Leedom*, 358 U.S. at 188, 79 S.Ct. 180). The *Leedom* court created the exception in part because plaintiff would not have been able to obtain meaningful relief had the action not been allowed to proceed. 358 U.S. at 185, 79 S.Ct. 180. See also *Amerco v. N.L.R.B.*, 458 F.3d 883, 889 (9th Cir.2006) (*Leedom* "held that the district court has jurisdiction to enter injunctive relief against certain representation decisions when a party's statutory or constitutional rights otherwise might never be vindicated. . . . We recognize the necessity of providing a forum for the vindication of statutory and constitutional rights, but . . . the *Leedom* . . . exception[ ] do[es] not apply outside the context of Section 9 actions or other situations in which meaningful judicial review is unavailable").

To assert jurisdiction under *Leedom*, a "plaintiff must show, first, that the agency has acted 'in excess of its delegated powers and contrary to a specific prohibition' which 'is clear and mandatory,' and, second, that barring review by the district court 'would wholly deprive [the party] of

a meaningful and adequate means of vindicating its statutory rights.'" *National Air Traffic Controllers Association AFL–CIO v. Federal Service Impasses Panel,* 437 F.3d 1256, 1263 (D.C.Cir.2006).

Vista concedes that "the District Court does not have jurisdiction over NLRB subpoenas unless the Application for Enforcement is filed by the Board."[53] It does not argue directly, moreover, that its suit satisfies the *Leedom* exception. Instead, it contends that the NLRB has waived its right to assert a lack of jurisdiction by filing an application to enforce the subpoena, and that the court has jurisdiction under 28 U.S.C. § 1337(a).[54] Under this provision, "district courts ... have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337(a).

▮ In support of its argument that the NLRB has waived its right to assert a lack of jurisdiction in this case, Vista cites *N.L.R.B. v. Cable Car Advertisers, Inc.,* 319 F.Supp.2d 991, 996 (2004).[55] *Cable Car,* however, is not binding precedent, and the court finds its reasoning unpersuasive. In *Cable Car,* a company to whom the Board had issued subpoenas filed a motion in district court to quash the subpoenas. *Id.* at 993. The Board filed a cross-application to enforce them. *Id.* The court first noted that under the NLRA, only the Board can seek the enforcement of a subpoena in district court, and that "a party receiving a subpoena in a subpoena enforcement proceeding may raise appropriate defenses once in district court but has no ability itself to file an independent motion such as a motion to quash." *Id.* at 996. Without citing authority, however,

the court stated that because the Board had filed a cross-application to enforce the subpoenas, it had waived its objection to Cable Car's "improperly filed motion." *Id.* The court also implied that the Board conceded it had waived jurisdiction. *Id.* ("However, as stated by the Board, by filing a cross-application to enforce the subpoenas in district court, the Board has waived its objection to Cable Car's improperly filed motion"). For these reasons, it concluded it had jurisdiction to hear Cable Car's motion. *Id.*

▮ The court cannot agree with the reasoning of the *Cable Car* court. Federal courts are courts of limited jurisdiction and may only hear cases they have been authorized to hear by the Constitution and Congress. A party cannot waive a lack of subject matter jurisdiction. See, e.g., *Bender v. Williamsport Area School District,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) ("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto. For that reason, every federal [ ] court has a special obligation to 'satisfy itself ... of its [ ] jurisdiction ...' even though the parties are prepared to concede it"); *Miguel v. Country Funding Corp.,* 309 F.3d 1161, 1164 (9th Cir.2002) ("Challenges to subject matter jurisdiction cannot be waived and may be raised at any point in the proceeding"); *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983) ("The defense of lack of subject matter jurisdiction cannot be waived, and the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction"); *GMAC*

---

**53.** Motion Opp. at 3–4.

**54.** *Id.;* Complaint, ¶ 4.

**55.** Motion Opp. at 3–4.

*Mortgage, LLC v. Rosario,* No. C 11–1894 PJH, 2011 WL 1754053, *1 (N.D.Cal. May 9, 2011) ("Subject matter jurisdiction is fundamental and cannot be waived. Federal courts can adjudicate only those cases which the Constitution and Congress authorize them to adjudicate"). For that reason, the court finds Vista's reliance on *Cable Car* unavailing.[56] The NLRB did not waive its right to dispute the court's jurisdiction to hear Vista's suit by filing an application to enforce the subpoenas.

▮▮▮▮ Nor does the court find convincing Vista's allegation that there is jurisdiction under § 1337. As noted, that section vests district courts with jurisdiction over proceedings arising under any act regulating commerce. See 28 U.S.C. § 1337(a). The Ninth Circuit and other circuits have held that a plaintiff cannot invoke § 1337 as a way of circumventing congressionally created methods of securing judicial review of agency action. As a result, they have concluded that, unless the *Leedom* exception is satisfied, a court does not have jurisdiction under § 1337 to hear a claim asserted by a plaintiff seeking review of an otherwise unreviewable agency order.

In *Wilmot,* 403 F.2d at 816, for example, the Ninth Circuit held that a district court lacked jurisdiction under § 1337 to hear the claim of appellees who had filed an action to enforce a subpoena *duces tecum* because "[t]here [was] no showing that the remedy of petition by the Board to enforce a subp[o]ena and the remedy of review of alleged errors on a petition to enforce or

set aside a final order by the Board [were] not adequate." The court concluded that "[a]ppellees [could] not circumvent the procedure set up in Sec[tion] 11(2) of the Act, (29 U.S.C. § 161(2)) and Sec[tion] 10(e) and (f) of the Act (29 U.S.C. § 160(e) and (f)) by resorting to an independent suit in equity under 28 U.S.C. § 1337." *Id.*

Similarly, in *General Finance Corp. v. Federal Trade Commission,* 700 F.2d 366, 368 (7th Cir.1983), the Seventh Circuit held that a plaintiff "may not bypass the specific method that Congress has provided for reviewing adverse agency action simply by suing the agency in federal district court under [§ ]1331 or [§ ]1337; the specific statutory method, if adequate, is exclusive." In *General Finance,* three consumer loan companies sued the Federal Trade Commission ("FTC"), seeking a declaratory judgment and an injunction preventing the FTC from investigating their insurance activities. The Seventh Circuit held that the district court lacked jurisdiction to hear the case, because "the target of a[n] [agency] investigation may not maintain a suit under sections 1331 or 1337 to enjoin the investigation but must wait [un]til[ ] the government sues to enforce a subpoena or other compulsory process in aid of the investigation, since that is the method of judicial review of FTC investigations that Congress has prescribed." *Id.*

In *Mobil Exploration & Producing U.S., Inc. v. Department of Interior,* 180 F.3d 1192, 1200 (10th Cir.1999), the Tenth

---

**56.** The NLRB argues that *Cable Car* is not controlling because in that case the Board applied for subpoena enforcement in the same action. (Reply in Support of Motion to Dismiss ("Motion Reply"), Case No. CV 14–02193, Docket No. 21 (June 23, 2014), at 2.) While this is a clear factual distinction between *Cable Car* and this case, the court is not certain that it is meaningful. The *Cable Car*

court did not find that it had jurisdiction to hear Cable Car's motion because the NLRB filed an application to enforce the subpoenas in the same action, and the court does not see how an application filed after commencement of the action—essentially a cross-claim—could change the basis for exercising jurisdiction over the original action.

Circuit faced a similar situation when reviewing an appeal from a district court order finding that the court lacked jurisdiction to consider a complaint seeking a declaratory judgment and injunction preventing the Secretary of the Interior from enforcing an administrative subpoena against a number of oil and gas lessees. The court held that individuals who are the subject of an administrative subpoena and who, under the statutory scheme cannot immediately sue to challenge its validity, have an adequate remedy at law because, "by refusing to produce the subpoenaed documents, [they can] forc[e] [the agency] to file an enforcement action to compel compliance with the subpoena. Thus, judicial review is available to [such individuals] if and when [the agency] [ ]files an enforcement action in ... federal district court." *Id.*; see also *Anheuser-Busch, Inc. v. F.T.C.*, 242 F.Supp. 122, 124–25 (E.D.Mo.1965) (holding that the court did not have jurisdiction to hear a declaratory judgment and injunctive relief action under, *inter alia,* § 1337, which sought an order enjoining the FTC from enforcing a subpoena requiring a corporation to produce documents, because the corporation could be fully and adequately heard in the FTC's proceeding to enforce the subpoena, which was authorized by a statute identical to the subpoena enforcement provisions of the NLRA).

*Wilmot, General Finance,* and *Mobil* make clear that the court does not have jurisdiction under § 1337 to hear Vista's complaint. Vista does not satisfy the *Leedom* exception because it can obtain meaningful judicial review of its objections to the Board's subpoenas by refusing to comply with the subpoenas, thereby compel-

ling the Board to file an enforcement action. It can then raise its objection as defenses to that action and obtain a judicial resolution of the issue. Both of these steps have occurred here. Because Vista can raise all of its arguments concerning the validity and scope of the subpoenas in its opposition to the NLRB's application, Vista cannot satisfy the *Leedom* exception. The court therefore lacks jurisdiction under § 1337 to adjudicate the claims in Vista's affirmative action against the Board, and Vista's complaint must be dismissed.

Because the question of its jurisdiction to hear the case is a pure question of law, the court concludes that allowing Vista to amend its complaint would be futile, It therefore dismisses the action with prejudice.[57] See *Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1051 (9th Cir.2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment"); *California ex rel. California Department of Toxic Substances Control v. Neville Chemical Co.,* 358 F.3d 661, 673 (9th Cir.2004) ("[D]enial of leave to amend is appropriate if the amendment would be futile," citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

## B. The NLRB's Application to Enforce the Subpoenas

The court next considers the merits of the NLRB's application to enforce the subpoenas.

### 1. Legal Standard Governing Enforcement of Subpoenas[58]

█ "The scope of [a district court's] inquiry in an agency subpoena enforce-

---

57. Because the court dismisses Vista's complaint with prejudice, it need not consider Vista's request, set forth in its opposition to the NLRB's application to enforce the sub-

poenas, that the court consolidate the two matters. (See Application Opp. at 5.)

58. Vista contends that the scope of the subpoenas should be evaluated using Rule

ment proceeding is narrow." *N.L.R.B. v. North Bay Plumbing, Inc.*, 102 F.3d 1005, 1007 (9th Cir.1996). A court is limited to reviewing only "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *Id.* "If this test is met, then the subpoena must be enforced unless the responding party can prove that the inquiry is unreasonable because it is unduly burdensome or overly broad." *Id.;* see also *N.L.R.B. v. International Medication Systems*, 640 F.2d 1110, 1114 (9th Cir.1981) ("[I]f the investigation is legitimate, the subpoenas is not needlessly broad, and the records sought are relevant to the inquiry," the subpoena should be enforced), cert. denied 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 134 (1982).

 To demonstrate that an inquiry is unduly burdensome, an "employer must show that compliance would unduly disrupt and seriously hinder normal operations of the business." *E.E.O.C. v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir.1993). "[T]he burden on a party seeking to dodge compliance with a subpoena 'is not a meager one.' Such a party must come forward with facts suggesting that the subpoena is intended solely to serve purposes outside the purview of the jurisdiction of the issuing agency. 'If the party seeking to quash the subpoena does not satisfy these threshold requirements, a district court should, in a § 11(2) enforcement case, act summarily.' " *N.L.R.B. v. Frazier*, 966 F.2d 812, 819 (3d Cir.1992)

(citing *N.L.R.B. v. Interstate Dress Carriers, Inc.*, 610 F.2d 99, 112 (3d Cir.1979)).

## 2. Whether Congress Has Granted the NLRB the Authority to Investigate

 The Ninth Circuit in *North Bay* recognized that "Congress has granted the Board the power to investigate." 102 F.3d at 1007. Specifically, the NLRA provides that "[t]he Board ... shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The [NLRA also provides that the] Board ... shall upon application of any party to such proceedings, forthwith issue to such party subp[o]enas requiring the attendance and testimony of witnesses or the production of any evidence in such proceedings or investigation requested in such application." 29 U.S.C. § 161(1). A party on whom the subpoena is served may, within five days of being served, "petition the Board to revoke, and the Board shall revoke, such subp[o]ena if in its opinion the evidence whose production is required does not relate to any matter under investigation, or any matter in question in such proceedings, or if in its opinion such subp[o]ena does not describe with sufficient particularity the evidence whose production is required." *Id.* In *North Bay*, the Ninth Circuit held that the language of § 161(1) was "clear. The Board may issue subpoenas requiring both the production of evidence and testimony during the investigatory stages of an unfair labor practices

26(b)(2)(C) of the Federal Rules of Civil Procedure. (Application Opp. at 6.) The subpoenas were issued as part of the Board's investigation of charges of unfair employer practices, however, not during discovery in this case. The Federal Rules of Civil Procedure do not govern the Board's administra-

tive investigations. See, e.g., *Kelly v. U.S. Environmental Protection Agency*, 203 F.3d 519, 523 (7th Cir.2000) ("[T]he Federal Rules of Civil Procedure do not apply to administrative proceedings"); *Moore v. Administrator, Veterans Administration*, 475 F.2d 1283, 1286 (D.C.Cir.1973) (same).

proceeding." *North Bay*, 102 F.3d at 1008.

Vista argues that the "local NLRB not only has no interest in protecting the employees' privacy rights but it is willing to allow illegal practices done by the union." [59] It contends that "[f]rom the onset, the [Board] has displayed a strong Pro–Union stance and a willingness to reinterpret laws and regulations to and only for the benefit of the Union." [60] It asserts that the Board has misconstrued the term "authority to investigate" so that it can "conduct a fishing expedition" by seeking information unrelated to the issue under investigation and by infringing on individual privacy rights.[61] These arguments are more properly construed as a challenge to the propriety of the subpoenas the Board issued rather than as an assertion that the Board has exceeded its powers. Stated differently, Vista argues not that the Board has taken action it lacks authority

to take under the statute—e.g., by issuing a subpoena to an employer not under investigation for an unfair labor practice—but that it has issued invalid subpoenas that seek irrelevant information and that are overly burdensome.[62] Because, as the Ninth Circuit recognized in *North Bay*, the NLRA clearly gives the Board power to issue subpoenas to employers, like Vista, that are under investigation for unfair labor practices, the court concludes that Vista's arguments go to the scope and propriety of the subpoenas.

### 3. Whether the NLRB Complied with Procedural Requirements

With respect to procedural requirements, the *North Bay* court held that "[t]he Board has properly promulgated procedures regarding [administrative] subpoenas." *Id.* Relevant here, 29 C.F.R. § 102.113(c) provides that "[s]ubpoenas shall be served upon the recipient either personally or by registered or certified

---

**59.** Application Opp. at 3.

**60.** *Id.* at 4.

**61.** *Id.* at 4–5.

**62.** Vista proffered four exhibits in support of its opposition to the application and its argument that the NLRB has displayed a "pro-union stance": (1) a charge it filed with the NLRB against the SEIU for having stolen a binder containing I–9 forms of its employees; (2) a December 20, 2013 letter from the NLRB's Regional Director dismissing Vista's charge; (3) Vista's January 2, 2014 appeal form; and (4) the NLRB's February 6, 2014 decision affirming the Regional Director's order. (See Application Opp., Exhs. A–D.) None of these exhibits supports Vista's assertion that the subpoenas are invalid because they request irrelevant, overbroad, and unduly burdensome material. To the extent Vista relies on the documents to show that the NLRB has taken a pro-union stance and argues, by implication, that the subpoenas are invalid for this reason, the court disagrees. The Regional Director's dismissal stated that she was dismissing the charge because there was "insufficient evidence to establish that

the Union was responsible for the theft of th[e] binder." (*Id.*, Exh. B (December 20, 2013 Dismissal of Vista's Charge against the SEIU).) The Board affirmed the decision on the same basis. (*Id.*, Exh. D (February 6, 2014 Order Affirming Dismissal of Vista's Charge against the SEIU) ("The evidence presented by the Employer was insufficient to establish any connection between the Union and the alleged theft of the I–9 binder by an unidentified individual").) The mere fact that the NLRB dismissed Vista's charge for lack of evidence and that it is still investigating the SEIU's charge against Vista does not suffice to show that the NLRB has a bias against employers in general, or Vista in particular, and therefore issued a subpoena that requests irrelevant information and with which compliance would be unduly burdensome. Whether the subpoena requests irrelevant information depends on a comparison of the nature of the charges against Vista and the information sought by the subpoena. Whether compliance with the subpoena would be unduly burdensome depends upon the cost of compliance to Vista.

mail or by telegraph, or by leaving a copy thereof at the principal office or place of business of the person required to be served." Section 102.113(f) provides that "[w]henever these rules require or permit the service of pleadings or other papers upon a party, a copy shall also be served on any attorney or other representative of the party who has entered a written appearance in the proceeding on behalf of the party. If a party is represented by more than one attorney or representative, service upon any one of such persons in addition to the party shall satisfy this requirement. Service by the Board or its agents of any documents upon any such attorney or other representative may be accomplished by any means of service permitted by these rules, including regular mail." 29 C.F.R. § 102.113(f).

The NLRB complied with these procedures: the Board served the two subpoenas on Vista by certified mail and sent a copy to Flores–Burt via regular mail as well.[63] Vista does not dispute that the Board complied with the applicable procedural requirements. Consequently, this prerequisite to enforcement of the subpoenas is satisfied.

### 4. Whether the Subpoenas Seek Information that is Relevant and Material

#### a. The First Subpoena (B–712357)

As the court has noted, the Board states that the items requested in the first subpoena are designed to aid it in determining whether it has, and should exercise, jurisdiction over Vista. "The Board is empowered to prevent the commission of unfair labor practices by 'any persons ... affecting commerce.'" *Volunteers of America, Los Angeles v. N.L.R.B.*, 777 F.2d 1386, 1388 (9th Cir.1985) (citing 29 U.S.C. § 160(a)). Section 160(a) "is intended to

give the Board the broadest jurisdiction possible under the commerce clause." *Id.* Congress "left it to the Board to ascertain whether proscribed practices would in particular situations adversely affect commerce when judged by the full reach of the constitutional power of Congress." *Polish National Alliance of the United States v. N.L.R.B.*, 322 U.S. 643, 648, 64 S.Ct. 1196, 88 L.Ed. 1509 (1944). "Even when the effect of activities on interstate commerce is sufficient to enable the Board to take jurisdiction of a complaint, the Board sometimes properly declines to do so, stating that the policies of the Act would not be effectuated by its assertion of jurisdiction in th[e] case." *N.L.R.B. v. Denver Building & Construction Trades Council*, 341 U.S. 675, 684, 71 S.Ct. 943, 95 L.Ed. 1284 (1951).

 The Board's first subpoena sought (1) Vista's articles of incorporation; (2) the names of all of its officers and directors; (3) Vista's stock subscription books and other records reflecting the identity of its shareholders; and (4) financial statements and other accounting documents showing the value of goods and services Vista has purchased from sources located within and outside the state of California, as well as the value of goods and services Vista has provided to persons located outside California. In response, Vista provided its Statement of Information, which it contends satisfied the first two categories of documents sought by the subpoena. Although the statement provides the name of Vista's sole officer and director, thereby satisfying item 2, it does not include Vista's articles of incorporation. It therefore appears that Vista failed to provide information responsive to categories 1, 3, and 4.

Vista argues that any need to respond to the first subpoena is moot because Vista

---

**63.** Diaz Decl., ¶¶ 8, 13.

has never challenged the Board's jurisdiction.[64] The NLRB counters that Vista has never admitted it is subject to the Board's jurisdiction or provided a stipulation to that effect.[65] There is no evidence in the record that Vista has ever conceded the Board has jurisdiction over it. See, e.g., *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 923 (9th Cir. 2001) ("[A]rguments of counsel, however, are not evidence" (internal quotation marks and citation omitted)); *Estrella v. Brandt*, 682 F.2d 814, 820 (9th Cir.1982) ("Plaintiff's assertion of brain damage appears only in her attorney's legal memoranda filed with the District Court. Legal memoranda and oral argument are not evidence"); *Single Chip Systems Corp. v. Intermec IP Corp.*, 495 F.Supp.2d 1052, 1062 (S.D.Cal.2007) ("[A]ttorney arguments cannot be offered as evidence in any proceeding, and therefore this Court cannot consider factual evidence that [is] only proffered by counsel"). Moreover, although an employer can waive the issue of the Board's jurisdiction if it does not raise it during the administrative proceedings, see, e.g., *St. Anthony Hospital Systems v. N.L.R.B.*, 655 F.2d 1028, 1030 (10th Cir. 1981) (holding that a hospital had waived its right to contest the Board's jurisdiction by failing to raise the matter as an issue during representation proceedings); see also 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board ... shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances"), the administrative proceedings in this case are far from over.

Accordingly, Vista's argument that it has never contested the Board's jurisdiction does not moot the need for issuance of the first subpoena.

### i. Item 1: Articles of Incorporation

Vista does not object to providing its articles of incorporation, and the articles may contain information that is relevant in assessing whether and how Vista engages in interstate commerce; specifically, the articles may the location of Vista's principal place of business or contain an overview of the type of business in which it is engaged. The court therefore finds that the articles of incorporation are relevant and material to the Board's determination of jurisdiction.

### ii. Item 3: Information about Shareholders

Vista objects to item 3—which seeks production of its stock subscription books—on the basis that this information is not reasonably calculated to lead to the discovery of admissible evidence.[66] Specifically, Vista asserts that the request for information about its shareholders is not relevant because shareholders are not liable for company actions, and are not involved in the daily operations of the business.[67] The NLRB does not respond to this objection. It is unclear to the court how information concerning Vista's shareholders would be relevant in assessing whether Vista's activity affects interstate commerce. Accordingly, the court finds that Vista's stock subscription books are irrelevant to the Board's assessment as to whether it is appropriate to exercise jurisdiction over Vista. The court therefore

---

64. *Id.* at 7.

65. Reply in Support of Application for Order Requiring Compliance with Administrative Subpoenas *Duces Tecum* ("Application Reply"), Case No. 14–03337 MMM (FFMx), Docket No. 14 (June 10, 2014), at 4.

66. Application Opp. at 6.

67. *Id.* at 7.

finds this aspect of the first subpoena unenforceable.

### iii. Item 4: Information about Vista's Provision of Services and Purchase of Goods

Vista next argues that because it resubmitted the commerce questionnaire, which it completed to the best of its ability, and which includes information as to whether it is engaged in interstate commerce, category 4—which seeks for documents showing the value of goods and services Vista purchased and provided to sources within and outside California—is moot.[68] The NLRB counters that the commerce questionnaire Vista submitted does not provide sufficient information to allow the Board to determine whether Vista engaged sufficiently in interstate commerce that the Board has and should exercise jurisdiction over it.[69] The court agrees.

Vista responded "no" to questions that asked whether its gross revenue from the provision of services to customers outside California exceeded $50,000, whether its gross purchases of materials or services outside California exceeded $50,000, whether gross revenue from the provision of services to firms that make sales directly to customers outside the state exceeded $50,000, and whether its gross revenue from the provision of services to public utilities, transit systems, newspapers, health care institutions, broadcasting stations, commercial buildings, educational institutions and/or retail concerns exceeded $50,000. It specified that the revenue under $50,000 it had received in each of these categories was "None." It answered "unknown" when asked whether its gross purchases from firms that, in turn, had purchased goods outside the state exceeded $50,000.

Accounting records that document Vista's purchases from vendors is relevant in assessing whether the Board should exercise jurisdiction over Vista; once Vista identifies the vendors from which it purchases, the Board can investigate whether those vendors are engaged in interstate commerce. The amount Vista purchases from these vendors is also relevant because it will help the NLRB determine whether, if these vendors do engage in interstate commerce, it is appropriate to exercise jurisdiction over Vista. Vista, moreover, has cited no authority for the proposition that because it completed the commerce questionnaire, the NLRB cannot seek documents designed to provide and/or verify the information set forth on the form. Vista does not dispute that the documents in category 4 would provide information relevant in assessing whether its activities affect interstate commerce; the court finds that they would because they would provide information relevant to that question.

### b. The Second Subpoena (B–712366)

 The NLRB contends that the items sought by the second subpoena are designed to aid its investigation of the substantive merits of the SEIU's charges against Vista.[70] Categories 1 through 5 seek information related to Vista's decision to revoke its practice of allowing a seven-minute, clock-in "grace period." Categories 6 through 14 seek information regarding the termination of two employees who were involved in unionization efforts. Categories 15–21 seek information concerning Vista's subcontract with Pro–Clean, which led Vista to lay off a number of employees, including employees involved in unionization efforts. Category 22 requests infor-

---

**68.** *Id.* at 7.

**69.** Application Reply at 4.

**70.** Application at 16.

mation regarding the role various Vista managers play in employment decisions such as hiring, promotion, and discipline.

Vista objects to all of these categories of documents on the basis that it has provided sufficient documents showing that its employees' involvement with the SEIU was not the but-for cause of any of the actions that form the basis of the SEIU's charges.[71] It asserts it was not even aware of union activity until a petition to unionize was filed on October 17, 2013, and argues that the court should deny the Board's application because it has established that it did not take retaliatory action against its employees.[72]

 An employer that had a legitimate business reason for its conduct cannot be held liable for violating the NLRA. See, e.g., *Retlaw Broadcasting Co. v. N.L.R.B.*, 53 F.3d 1002, 1006 (9th Cir.1995) ("An independent violation of § 8(a)(1) 'is established by showing: (1) that employees are engaged in protected activities . . .; (2) that the employer's conduct tends to interfere with, restrain, or coerce employees in those activities . . .; and (3) that the employer's conduct is not justified by a legitimate and substantial business reason," citing *Fun Striders, Inc. v. N.L.R.B.*, 686 F.2d 659, 661–62 (9th Cir.1981) (internal alterations original)). Vista's argument is premature, however, for it is well established that "a party may not defeat agency authority to investigate with a claim that could be a defense if the agency subsequently decides to bring an action against it." *E.E.O.C. v. Federal Express Corp.*, 558 F.3d 842, 848 (9th Cir.2009) (citing *E.E.O.C. v. Children's Hospital Medical Center of Northern California*, 719 F.2d 1426, 1430 (1983)).

### i. Categories 1–5: The Grace Period

Categories 1 through 5 seek (1) documents reflecting written workplace attendance and tardiness policies, documents reflecting that the policies were communicated and/or distributed to employees, (2) and (3) documents reflecting employee's acknowledgment and receipt of employee handbooks, (4) time records for a specific group of eleven employees, and (5) documents reflecting all warnings, discipline, and discharges for violations of the attendance and tardiness policies. The subpoena seeks all documents responsive to these categories for the period from October 31, 2011 to the present.

Vista first argues that it has already provided its November 1, 2011 employee handbook and thus that category 1 is moot. Category 1, however, requests all written workplace attendance and tardiness policies, as well as documents reflecting that the policies were communicated and/or distributed to employees from October 31, 2011 to the present. Vista does not state that the policies reflected in its November 1, 2011 employee handbook have not changed between 2011 and the present. Nor does it state that it has no other written workplace attendance and tardiness policies. Moreover, although Vista gave the NLRB minutes of three staff meetings at which its policies and practices were discussed, it does not represent that these meeting minutes and the handbook are the only documents reflecting that its attendance and tardiness policies were communicated or distributed to employees. Vista has therefore not shown that category 1 is moot.

Vista next argues that it has given the NLRB six months of time records and that category 4 is thus moot. Category 4, how-

---

**71.** Application Opp. at 7–8.

**72.** *Id.* at 8, 9–10.

ever, requests two years of time records for employees Dafny Cobar, Lerma Davis, Maria Ramirez, Ivania Rueda, Elisa Mayorga, Marta Aparicio, Rosa Lopez, Genaro Meza, Delfina Sanchez, Maria Rodriguez, and Carmelina Perdomo. From the court's review, it appears that the time records Vista provided cover a number of employees who are not on this list; of the employees on the list, Vista has given the NLRB time records only for Lerma Davis, Maria Ramirez, and Delfina Sanchez. Accordingly, Vista has failed to show that category 4 is moot.

Vista also contends that all of categories 1 through 5 are irrelevant to the charges because it did not terminate any employees for having violated the attendance and tardiness policy.[73] As noted, however, one of the charges the SEIU filed alleges that Vista retaliated against its employees for engaging in protected conduct by "making changes to employees' working conditions."[74] Documents reflecting the company's attendance and tardiness policies, and any warnings or discipline employees received for violating those policies are relevant to the Board's investigation of that charge.

Vista also objects to the two-year time period categories 1–5 cover. As the Board argues, however, older documents are relevant to its investigation of the charge because they will reflect how long Vista has had the attendance and tardiness policy, how strictly it has enforced that policy, whether it changed its practice of allowing a grace period despite the terms of its attendance and tardiness policy on a regular or ad hoc basis prior to its employees' involvement in unionization activities, and/or whether it changed its practice after its employees began attempting to or-

ganize with the SEIU.[75] Vista makes no other argument as to why categories 1–5 are irrelevant or immaterial. For the reasons stated, the court finds that the documents are both relevant and material to the Board's investigation of the SEIU's charge that Vista changed its practice of allowing a grace period to retaliate against employees who were attempting to unionize.

### ii. Categories 6–14: The Termination of Delfina Sanchez and Marta Aparicio

Items 6 through 14 seek (6) complete disciplinary records for Marta Aparicio, Delfina Sanchez, and Maria Lopez, (7) documents related to investigation of the incident that resulted in Aparicio's and Sanchez's termination, (8) documents reflecting why Jennifer Abunza and Lopez were not disciplined, (9) documents reflecting whether Lopez is currently employed by Vista, (10) if Lopez was terminated, documents reflecting the date of her discharge, (11) documents reflecting all disciplinary policies in effect from October 31, 2011 to the present, (12) documents reflecting all policies regarding sleeping at work from October 31, 2011 to the present, and documents showing that these policies were communicated and/or distributed to employees, (13) documents reflecting all warnings or other disciplinary actions taken against employees for sleeping at work from October 31, 2011 to the present, and (14) documents reflecting whether Aparicio and Sanchez were scheduled to work during October and November 2013.

Vista argues that it has already produced documents concerning the incident that led to Aparicio's and Sanchez's termi-

---

**73.** *Id.* at 8.

**74.** Application, Exh. 1 at 12 (Charges).

**75.** Application Reply at 7.

nation and that are responsive to categories 6–14.[76] As the court has noted, Vista sent the NLRB a letter and photograph of two individuals sleeping in chairs taken by the son of a recently deceased resident of Vista.[77] It also sent the Board the November 1, 2011 Employee Handbook, which contains a policy regarding sleeping at work. While these documents are responsive to categories 7, 11, and 12, there is no evidence that these are all documents that are responsive to those categories or to categories 6, 8–10, and 13–14. Vista has therefore not shown that these aspects of the subpoena are moot.

Vista makes no argument as to why the documents requested in categories 6–14 are irrelevant or immaterial. The court determines that they are relevant. The SEIU alleges that Vista terminated Sanchez and Aparicio, who were union supporters, for sleeping on the job, but that it did not terminate other, non-union supporters who were caught sleeping by the same individual; the union also alleges that, over the years, Vista had not disciplined its employees for sleeping while on the job. Documents reflecting Vista's policy regarding sleeping at work over the past two years as well as any disciplinary action it has taken against employees for sleeping during that period are therefore relevant in determining whether Vista retaliated against Sanchez and Aparicio by terminating them for violating a policy it did not generally enforce.

### iii. Categories 15–21: The Pro–Clean Subcontract

Categories 15 through 21 seek (15) layoff and/or termination notices for employees who were discharged as a result of the Pro–Clean subcontract, (16) documents reflecting communications with Pro–Clean from October 31, 2011 to the present, (17) documents reflecting the reason and/or business justification for Vista's decision to enter into the Pro–Clean contract, (18) documents reflecting all employees hired by Vista since October 14, 2013 and their job titles, (19) documents reflecting the identity of all individuals who have worked at Vista's facility pursuant to the subcontract, (20) documents reflecting whether Roman Lopes is still employed by Vista, and (21) all versions of schedules for housekeeping and maintenance staff from September through December 2013.

Vista has given the NLRB the termination notices for employees who were discharged as a result of the Pro–Clean contract, and a copy of its October 3, 2013 Service Agreement with Proclean. These items appear to respond to categories 15 and 16. There is no evidence that Vista has produced documents responsive to the other categories, however. Vista does not argue that the documents requested in categories 15 through 21 are irrelevant or immaterial. It contends rather that it entered into the subcontract with Pro–Clean to save money and that it began discussions with Pro–Clean in August 2013, months before learning that its employees were attempting to unionize in October 2013.[78] These arguments concern Vista's defense to the charge. They do not demonstrate that categories 15–21 are not relevant. As the Board notes, the documents requested are relevant to investigating whether Vista entered into an unlawful subcontract with Pro–Clean and laid off pro-union employees to retaliate against them for their union activities.[79]

**76.** Application Opp. at 9.

**77.** Application, Exh. 4 (November 27 Letter).

**78.** Application Opp. at 9.

**79.** Application at 17. The Board asserts that the SEIU adduced evidence that Vista knew of employees' unionizing efforts as early as

#### iv. Category 22: Information about Managers' Roles

Finally, category 22 seeks documents reflecting the participation of certain managers in hiring, promotion, and discharge decisions. Vista argues that this request is moot because it has already given NLRB the information sought. There is nothing in the record, however, demonstrating that Vista has done so. The role of Vista's managers and their supervisory authority is relevant in establishing the management hierarchy at Vista, which in turn is relevant in determining whether a particular manager's conduct can be imputed on Vista. As the Board notes, the SEIU alleges that Esther Cuellar told an employee who was a union supporter that her upcoming vacation request was going to be denied because of her union activities, and that she made threatening statements to other employees who supported the union. The SEIU also alleges that Vida Zelaya told employees they would no longer be able to wear uniforms that were the union's colors. Under the NLRA, a "supervisor" is "any individual having the authority in the interest of the employer to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U.S.C. § 152(11). In order to determine whether Cuellar's and Zelaya's alleged conduct can be imputed to Vista, the Board must determine whether they are supervisors within

the meaning of the act. Category 22 seeks documents relevant for that purpose.

#### c. Conclusion Regarding Relevance

For the reasons stated, the court concludes that all documents requested by the NLRB in the two subpoenas are relevant and material with the exception of category 3 in the first subpoena, B–712357, which seeks information concerning Vista's shareholders.

### 5. Whether Vista Has Shown that the Subpoenas are Unduly Burdensome or Overly Broad

 Because the court has found that the subpoenas seek information that is relevant and material, the court must enforce the subpoenas unless Vista shows that they are unduly burdensome or overly broad. Vista contends they are.

#### a. The First Subpoena (B–712357)

Vista argues the first subpoena is overbroad because it requests documents for an unspecified time period.[80] It also asserts the subpoena is unduly burdensome because it will require a great deal of time and expense to comply with its terms. It contends that searching for the records requested will require that it reassign several employees who will be unable to perform their usual work, and that it will either have to have other employees work overtime or hire temporary employees to perform those tasks.[81] Vista asserts this will seriously disrupt its business operations, and that disrupting operations will place patients at substantial risk of harm or neglect.[82] Finally, it argues that responding to the subpoena will require that

---

July 2013. (*Id.* at 9 (citing Exh. 3) (November 10 Letter).)

**80.** Application Opp. at 6.

**81.** *Id.*

**82.** *Id.*

it interpret and analyze data and create documents that do not otherwise exist.[83]

### i. Whether the First Subpoena Is Overbroad

The court does not find the subpoena vague as to time. Category 1 seeks Vista's articles and certificate of incorporation. Vista only has one set of articles and one certificate of incorporation. Categories 2 and 3 are written in the present tense, indicating that they seek the names of Vista's current directors, officers, and shareholders. Category 4 seeks financial statements and other accounting documents that show "for the preceding 12 months or for the Employer's last fiscal year," the value and nature of goods Vista has purchased and services it has provided. This is a clear time period.

### ii. Whether the First Subpoena Is Unduly Burdensome

Vista's argument that the subpoena is unduly burdensome fails because it has adduced no evidence of burden; indeed, it adduced none in support of its petition to revoke the subpoena before the Board. As the court has noted, arguments in briefs are not competent evidence. Vista appreciates this, as it submitted the declarations of Flores–Burt and its Administrator, Rosa Valdivia in support of its opposition. Valdivia, however, does not address the effect complying with the subpoena would have on Vista's business. Nor does she state that responding to the first subpoena would require that the company analyze data or create documents that do not exist.

In *Equal Employment Opportunity Commission v. Bay Shipbuilding Corp.,* 668 F.2d 304, 313 (7th Cir.1981), the Seventh Circuit faced a similar situation. There, a company opposed enforcement of an administrative subpoena on the ground

that it was unduly burdensome. The court held that

"[a]n identical argument has routinely been rejected in EEOC and related cases unless compliance would threaten the normal operation of a respondent's business; there has been no such showing here. If a respondent lacks the information necessary to respond to part of a subpoena, of course it would be excused pro tanto. *H. Kessler & Co. v. EEOC,* 53 F.R.D. 330, 336 (N.D.Ga. 1971), modified on other grounds, 472 F.2d 1147 (5th Cir.1973), certiorari denied, 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 398.[ ] Bay has made no such showing[, however]. Bay had ample opportunity to demonstrate before the EEOC that it would be unduly burdened by the subpoena, but in its petition to revoke the subpoena and its administrative appeal from the adverse ruling of the EEOC's District Office it did not show how the subpoena might be unduly burdensome nor did it present any affidavits to support its conclusionary assertion to that effect. Similarly, in its motion to dismiss and supporting briefs it did not demonstrate to the district court why it would be unduly burdened by the subpoena. Therefore Judge Evans was justified in holding that the requests made in the subpoena were not unduly burdensome." *Id.*

Likewise, here, Vista has adduced no evidence supporting its assertion that compliance with the subpoena will require that it expend money, compile data, or produce documents that do not exist.

Even had Vista adduced evidence that it would have to pay overtime or hire temporary employees to locate and compile the records the NLRB seeks in the first subpoena, it has not shown how this fact

---

83. *Id.*

makes providing a response to the subpoena unduly burdensome. It has not shown, for example, that it cannot afford to pay overtime or hire temporary employees, with the result that it would forego those options and leave its patients unattended or close its facility until a response could be prepared. Nor has it provided an estimate of the cost of compliance and explained why it would be unable to afford that amount. See, e.g., *E.E.O.C. v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir.1993) ("We do not think Diners Club has demonstrated that compliance would be unduly burdensome. At best, it has perhaps shown that compliance would be inconvenient and involve some expense.... Ms. Giordano [ ] stated in her affidavit that for Diners Club to respond to the subpoena 'would require two full-time employees working approximately six months.' ... [T]he affidavit of Ms. Giordano ... is insufficient to prove that production of the requested information would be unduly burdensome. A court will not excuse compliance with a subpoena for relevant information simply upon the cry of 'unduly burdensome.' Rather, the employer must show that compliance would unduly disrupt and seriously hinder normal operations of the business. In this connection, Diners Club has not offered any specific estimate of cost involved nor shown how compliance would impact the normal operations of Diners Club" (internal citation omitted)). As in *Citicorp*, even had Vista adduced evidence that it would have to pay overtime or hire temporary workers to comply with the subpoena, it would also have had to show what the likely costs of doing so would be and that paying such costs would seriously disrupt or threaten its business to demonstrate that the subpoena is overbroad. No such showing has been made.

■ Contrary to Vista's implication, moreover, courts have held that an administrative subpoena may validly require a party to compile data in order to respond to it. See, e.g., *Bay Shipbuilding*, 668 F.2d at 313 ("The company urges too that the EEOC has no authority to require it to compile information. This hoary point has already been correctly rejected in other EEOC cases," citing *New Orleans Public Service, Inc. v. Brown*, 507 F.2d 160, 165 (5th Cir.1975), and *Motorola v. McLain*, 484 F.2d 1339, 1346 (7th Cir.1973)). Thus, even if the first subpoena required Vista to compile data, it would be enforceable. The court notes, however, that only category 2, which requests the names and addresses of Vista's directors and officers, even potentially required that Vista compile data and provide a document that does not otherwise exist. Not even this category actually required Vista to do so, however, as Vista complied with the request by producing a copy of the Statement of Information it prepared; this was a document already in existence. Category 1 seeks Vista's articles and certificate of incorporation. Category 3 seeks existing stock subscription books, stock transfer books, share registers, and other records and documents reflecting the identities of Vista's shareholders. Category 4 seeks financial statements, balance sheets, profit and loss statements, and other accounting documents that show the goods Vista purchased and the services it rendered. None of these categories requires that Vista compile information and create documents in order to respond.

### iii. Conclusion Regarding the Enforceability of the First Subpoena

For all of these reasons, Vista has failed to show that the first subpoena is overbroad or that compliance with it would be unduly burdensome. Other than the pro-

duction of documents reflecting the identity of Vista's shareholders, therefore, the court concludes that the first subpoena is enforceable and that Vista must comply with its terms.

### b. The Second Subpoena (B–712366)

Vista argues that the second subpoena is overbroad because it requests information regarding employees no longer employed by the company.[84] Additionally, it repeats its argument that the subpoena is vague as to time—and therefore overbroad—because it is unclear whether the subpoena requests documents for all employees hired after October 31, 2011, or for all employees who were employed as of October 31, 2011.[85] Vista also contends that producing documents for the two previous years would be unduly burdensome because it would require an "immense review" of records and be "extremely costly."[86] It also asserts, once again, that complying with the subpoena would require that it create documents that do not exist and that it interpret and analyze data. Finally, it argues that releasing its employees' records would violate their privacy rights under the Privacy Act of 1974 ("the Privacy Act"), 5 U.S.C. § 552a(b).

### i. Whether the Second Subpoena Is Overbroad

The court does not agree that the second subpoena is overbroad because it requests information about employees who no longer work at the company. Nor does it find the subpoena vague as to time. As the court noted earlier, information concerning Vista's enforcement of its workplace attendance and tardiness policies over the course of two years is relevant in assessing whether it generally enforced

the policies, given its "grace period" practice. Two years is likely adequate to determine the manner in which the policies were enforced, because it covers a period sufficiently in advance of the employees' efforts to unionize that the Board can determine whether Vista changed its enforcement practices after it learned that the employees were attempting to unionize. Consequently, the request is not overbroad.

Nor is the scope of the documents sought vague as to time. The plain language of the subpoena indicates that it seeks all documents created on or after October 31, 2011 that contain information responsive to the request. For example, category 2 seeks documents reflecting employees' acknowledgment and receipt of employee handbooks "[f]or the period commencing October 31, 2011 and continuing to present...."[87] It thus clearly requests all employee acknowledgments or other documents reflecting employees' receipt of handbooks on or after October 31, 2011. Vista's attempt to create ambiguity by reading the language of the subpoena in a strained way not supported by its actual terms does not make the subpoena vague or overbroad.

### ii. Whether the Second Subpoena is Unduly Burdensome

Vista has also failed to show that compliance with the subpoena would be overly burdensome. As noted earlier, Vista has adduced no evidence of burden. It has not shown that reviewing employee files for the past two years would require an "immense review" of records or be "extremely costly." There is no evidence regarding the number of employees who work for Vista—information that would provide

---

84. *Id.* at 8.

85. *Id.*

86. *Id.* at 8–9, 10.

87. Application, Exh. 11 at 517 (Second Subpoena).

some context for Vista's assertion that the record review would be "immense." Nor is there any estimate of the potential cost of compliance or evidence that such a cost would seriously disrupt Vista's business operations or endanger patients. Finally, Vista has adduced no evidence that compliance would require it to interpret data or create documents. The court doubts, in fact, that any of the categories of documents requested by the second subpoena would require that Vista create documents that do not exist. All of the requests appear to seek documents already in existence. Even if the subpoena required that Vista create documents, however, this is not, as noted, a valid basis for objecting to an administrative subpoena, and Vista has not shown that, if required, reporting the information requested in new documents would be unduly burdensome.

■ Finally, Vista's argument that releasing employee records would violate its employees' rights under the Privacy Act is unpersuasive. The Privacy Act regulates agencies' disclosure of records. See 5 U.S.C. § 552a(b) ("No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains"). The act applies only to the release of information by agencies, not private individuals or corporations like Vista. See *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1447 (9th Cir.1985) (acknowledging that the Privacy Act defines agency as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency"); *Shi v. Central Ari-*

*zona College*, No. 08–80131–RMW (HRL), 2008 WL 4001795, *1 (N.D.Cal. Aug. 27, 2008) ("[T]he Privacy Act protects individuals from government agencies disclosing personal information. Cypress is not a government agency; it is a private employer"); *Bell v. Moore*, CV 06–1526–PHX–SMM, 2007 WL 865313, *3 (D.Ariz. Mar. 20, 2007) (denying a motion for leave to amend to add a Privacy Act claim against a former employer because "the Privacy Act does not apply to private entities"). Because Vista is a private employer, not an agency of the federal government, the Privacy Act does not apply, and it will not violate its employees' rights under the statute by supplying the information requested.

Moreover, in *North Bay*, the Ninth Circuit dismissed an employer's argument that the Privacy Act applied, stating that "[t]he Privacy Act's prohibition against disclosure does not apply to information that is not retrievable by name or other individual identifier. North Bay does not contend that the Board's investigative records are maintained in such a way." 102 F.3d at 1009; see also 5 U.S.C. § 552a(a)(5) ("[T]he term 'record' means any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph"). Here, too, Vista does not argue that the NLRB maintains its investigative records in a manner that permits the retrieval of information by name or other individual identifier. For these reasons, the Privacy Act does not apply.

### iii. Conclusion Regarding Enforceability of the Second Subpoena

Vista has failed to show that the second subpoena is overbroad or unduly burdensome. The court therefore concludes that the subpoena is valid and enforceable, and that Vista must comply with its terms.

## III. CONCLUSION

For the reasons stated, the court grants the NLRB's motion to dismiss Vista's complaint in Case No. CV 14–02193, and dismisses the complaint with prejudice. The court grants in part and denies in part the NLRB's application to enforce the subpoenas in Case No. CV 14–03337. Both subpoenas are valid and enforceable, with the sole exception that the Board failed to show that information concerning the identity of Vista's shareholders is relevant to its determination of jurisdiction. This aspect of the first subpoena (category 3) is therefore unenforceable. The subpoenas are enforceable in all other respects. Vista must respond to the subpoenas within twenty (20) days of the date of entry of this order.